## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PORCHA WOODRUFF,

    an individual,

        Plaintiff,

V

~~CITY OF DETROIT~~

 ~~a municipal corporation,~~

LaSHAUNTIA OLIVER,

City of Detroit Police Detective,
Individually, and in her Official
Capacities, and

        Defendant.

Case No. 5:23-cv-11886

Hon. Judith E. Levy

_____/

## <u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

NOW COME Plaintiff, Porcha Woodruff, by and through counsel, and submit the following Plaintiff's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56.

1. This case arises out of Plaintiff being falsely arrested for robbery and carjacking following a faulty facial recognition match.

2. Plaintiff's Federal and State rights to be free from false arrest and false imprisonment were violated when officer Lashauntia Oliver lacked probable cause to request an arrest warrant for Plaintiff's arrest.

3. Plaintiff's Federal and State rights to be free from malicious prosecution were violated when officer Lashauntia Oliver lacked probable cause to request an arrest warrant for Plaintiff's arrest.

4. There was a conference between attorneys or unrepresented parties and others persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, Plaintiff, Porcha Woodruff, respectfully request that this Honorable Court grant Plaintiff's Motion for Partial Summary Judgment and award damages, attorney fees and any other relief this court deems appropriate.

Dated: November 8, 2024                          Respectfully submitted,

                                                 /s/Ivan L. Land
                                                 Ivan L. Land (P65879)
                                                 Law Offices of Ivan L. Land,
                                                 P.C. 25900 Greenfield Rd.,
                                                 Suite 210 Oak Park, MI 48237-
                                                 1267 248.968.4545 / (f)

248.968.4540 ill4law@aol.com
**Attorney for PLAINTIFF**

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PORCHA WOODRUFF,

an individual,                          Case No. 5:23-cv-11886

Plaintiff,                     Hon. Judith E. Levy

V

~~CITY OF DETROIT~~

~~a municipal corporation,~~

LaSHAUNTIA OLIVER,

City of Detroit Police Detective,
Individually, and in her Official
Capacities, and

Defendant.

_____/

## BRIEF IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

i

# TABLE OF CONTENTS

*ISSUES PRESENTED*.................................................................. *iii*

*PRIMARY CONTROLLING AUTHORITY* ......................................*iv*

*I.   LEGAL STANDARDS* ..........................................................12

*II.   ARGUMENT* ......................................................................13

  **A.  Whether Plaintiff's Federal and State Rights to be free from False Arrest and False Imprisonment Were Violated Where Officer LaShauntia Oliver Lacked Probable Cause to Request an Arrest Warrant for Plaintiff's Arrest** ...............................................................................13

  **B.  Whether Plaintiff's Federal and State Rights to be free from Malicious Prosecution Were Violated Where Officer LaShauntia Oliver Lacked Probable Cause to Request an Arrest Warrant For Plaintiff's Arrest**.........22

*CONCLUSION* ..........................................................................*25*

## ISSUES PRESENTED

1.   **Whether Plaintiff's Federal and State Rights to be free from False Arrest and False Imprisonment Were Violated Where Officer LaShauntia Oliver Lacked Probable Cause to Request an Arrest Warrant For Plaintiff's Arrest**

     Plaintiff states: Yes
     Defendant states: No


2.   **Whether Plaintiff's Federal and State Rights to be free from Malicious Prosecution Were Violated Where Officer LaShauntia Oliver Lacked Probable Cause to Request an Arrest Warrant For Plaintiff's Arrest**

     Plaintiff states: Yes
     Defendant states: No

# PRIMARY CONTROLLING AUTHORITY

**Cases**

*Althers v. Schebil,* 188 F.3d 365, 371 (6th Cir. 1999)......................................13, 14

*BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986) .................................................13

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)..................................................................................................................12

*Cox* v *Williams,* 233 Mich App 388, 393; 593 NW2d 173 (1999). .......................23

*Franks v. Delaware,* 438 U.S. 154,181; 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ....17

*Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585, 617 (1981)...........................24

*Gardenhire v. Schubert,* 205 F.3d 303, 317 (6th Cir. 2000) ...................................16

*Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)......20

*Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)............17

*Kuehl v. Burtis,* 173 F.3d 646, 651 (8th Cir.1999)) ..........................................13, 16

*Lippay v. Christos,* 996 F.2d 1490, 1501 (3d Cir.1993).........................................20

*Matthews v. Blue Cross & Blue Shield of Michigan,* 456 Mich. 365, 378, 572 N.W.2d 603 (1998). ..........................................................................................24

*Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997)...............................12

*Ouza v. City of Dearborn Heights,* 969 F.3d 265, 282 (6th Cir. 2020)...................16

*Peet v. City of Detroit,* 502 F.3d 557, 570 (6th Cir. 2007).....................................17

*Peterson Novelties, Inc. v. City of Berkley,* 259 Mich.App. 1, 672 N.W.2d 351, 362 (2003)...........................................................................................................21

*Pyles v. Raisor,* 60 F.3d 1211, 1215 (6th Cir. 1995)...............................................21

*Sevigny v. Dicksey,* 846 F.2d 953, 957-59 (4th Cir.1988)......................................13

*Sykes* v. *Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).........................13, 22, 23, 24

*Terry Barr Sales Agency, Inc.* v. *All-Lock Co.,* 96 F.3d, 174,178 (6th Cir. 1996)...12

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)..........................16

*Thompson* v. *Clark,* 596 U. S. 36, 142 S. Ct. 1332 (2022) .....................................23

*United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir.1993).................................18

*Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir.2005) ..........13

*Weser v. Goodson,* 965 F.3d 507, 513 (6th Cir. 2020)............................................16

*Wilson v. Russo,* 212 F.3d 781, 786-87 (3d Cir.2000) ................................17, 18, 20

*Wolfe v. Perry,* 412 F.3d 707, 715 (6th Cir. 2005).................................................21

**Statutes**

42 U.S.C. § 1983 ....................................................................................................17

**Rules**

Fed.R.Civ.P. 56(c)...................................................................................................12

## FACTS

On January 29, 2023, Laurence Walker (hereinafter "Victim") reported to the Detroit Police Department that he had been robbed at gunpoint for his personal property and his vehicle (ECF No. 4, PageID 64).

The description the Victim gave was that a black male, brown complexion, short, slim build, with short braids and a beard (See Exhibit 1, Reporting Officer Narrative).  The Victim stated that he saw the same dude at the BP gas station earlier that day and the dude hugged the female subject at the gas station (ECF No. 4-1 PageID. 96). The Victim stated that this was the same dude that robbed and carjacked him on Gratiot/Bessemore (ECF No. 4-1PageID. 96).  Defendant Oliver had a photo from the BP gas station of a male matching the description of the individual that the Victim had described (See Exhibit 2, Photo of Male Suspect at BP gas station).

Victim stated that he dropped off a woman that he had spent the day with and got robbed and carjacked at gun point (See Exhibit 3, Gregory Scouten In-Car Video-4:18 to 4:40). Victim stated that he didn't know the female subject (See Exhibit 3, Gregory Scouten In-Car Video, 9:20-9:34)

Victim admitted he was under the influence of alcohol and potentially drugs at the time of the incident (ECF No. 4-1, PageID 94).

1

On January 30, 2023, officer in charge LaShauntia Oliver (hereinafter "Defendant Oliver") from the commercial auto theft unit of the Detroit Police Department was assigned Victim's case (ECF No. 4, PageID 64).

On January 31, 2023, Defendant Oliver contacted Victim, and Victim informed Defendant Oliver that his cellphone had been returned to 6240 Van Dyke Detroit, MI 48213 (hereinafter "BP gas station") the day prior. The Victim told Defendant Oliver that his cellphone was returned to the BP gas station by a female (ECF No. 4, PageID 64).

On January 31, 2023, Defendant Oliver went to the BP gas station to view the video footage from the day prior (January 30, 2024), to determine the identity of the female who returned the cellphone to the gas station (ECF No. 4, PageID 65).

The January 30, 2023 video footage depicted female subject being allowed into a secure area behind the bullet proof glass for nine minutes returning Victim's cellphone to the BP gas station attendant (See Exhibit 4, January 30, 2023 BP gas station Video-3:56).   The female subject and the gas station attendant were familiar with each other. At one point, the female subject receives free items from the gas station attendant including a pack of cigarettes handed to her while in the secure area (See Exhibit 4, January 30, 2023 BP gas station Video-7:30).

On February 1, 2023, Defendant Oliver submitted an AVERT request to members of the Detroit Police Department to extract the video footage from January 30, 2023 of the female subject returning the cellphone to the BP gas station (ECF No. 4, PageID 65). Facial recognition returned a match for Plaintiff (Porcha Woodruff) (ECF No. 4, PageID 65).

At the time the facial recognition match was given to Defendant Oliver, Defendant Oliver was given a document by Nathan Howell, crime analyst, which stated that the facial recognition result is an investigative lead, and should not be used as probable cause (See Exhibit 6, Nathan Howell's Case Supplemental Report).

The photo that the facial recognition generated for Plaintiff was from a 2019 mug shot of Plaintiff. The photo stated "Investigative Lead" (See Exhibit 7, Facial Recognition Document).

On February 2, 2023, Defendant Oliver had a second interview with Victim, and learned that he met a female named Trinidad at the Hoover Market on January 29, 2023 and had sex with her (ECF No. 4-1, PageID 96). This information regarding the female subject and the Victim having sex was not disclosed by the Victim in prior interviews. Defendant Oliver also learned that the Victim and the female subject were at that same BP gas station the night of the incident (ECF No. 4-1, PageID 96).

Once Defendant Oliver learned that the Victim and the female were at that BP gas station the night of the alleged robbery and carjacking, Defendant Oliver went back to the BP gas station a second time to view the video footage from January 29, 2023, the night of the alleged incident (ECF No. 4, PageID 66) (See Exhibit 5, January 29, 2023 BP Gas Station Video).

Also on February 2, 2023, a black male, Daniel White, ("hereinafter Mr. White") was arrested driving Victim's stolen vehicle (ECF No. 4-1, PageID 98). The description of Mr. White was 5'10, 190 lbs., light complexion, bald head (ECF No. 4-1, PageID 98-99).

While in custody, Mr. White was interrogated by Officer Ned Gray and Officer Quentin Glover. Mr. White was shown a photo of the female subject and he knew her as "Trinidad" (See Exhibit 8, Daniel White's Interrogation at DDC Video-13:45), and he also informed the officers that he had the female subject's cellphone number stored in his cellphone (See Exhibit 8, Daniel White's Interrogation at DDC Video-13:55). Mr. White stated that the female subject's Facebook name is Trinidad Trinity and they are Facebook friends (See Exhibit 8, Daniel White Interrogation at DDC Video-15:10).

 Finally, Mr. White stated that, "Trinidad" frequents gas stations (See Exhibit 8, Daniel White Interrogation at DDC Video-28:50), which is consistent with the Victim stating that he and the female subject had been at the BP gas

station the night of the robbery and carjacking where the female knew several

individuals (ECF No. 4-1, PageID 96).

On February 3, 2023, the Victim went to participate in a photo line-up for

the female subject at the Detroit Detention Center (ECF No. 4-1, PageID 106).

The photo that was used in the six-pack line-up was not the photo that was

generated through the facial recognition match. The photo was a 2015 mug shot.

At the time, the photo was approximately eight-years old (ECF No. 4-1, PageID

107).  Defendant Oliver had access to Plaintiff's current Driver's License, but it

was not used in the six-pack photo line-up (ECF No. 4, PageID 67).

Prior to viewing the six-pack line-up, Victim was given a document titled

"Lineup Instructions." The document stated the following:

> "You should not feel compelled to make an identification. The investigation
> will continue whether or not you select someone. **If you make a selection of
> an individual who is ultimately not involved in the crime, that individual
> will not incur any charges or police action just because you selected
> them"** (See Exhibit 9, Lineup Instructions).

Victim stated in the Victim/Witness Photographic Lineup Statement, "I

picked #2 based on seeing the individual in person for multiple hours prior to me

being carjacked (ECF No. 4-1, PageID 106).

The Victim has never alleged that the female subject robbed or carjacked

him."  The Victim stated that, **"The female Trinidad was just standing in the

street not doing anything to help."**  (ECF No. 4-1, PageID 97).  After the Victim

picked Plaintiff in the photo line-up, Defendant Oliver **without doing any**

**investigation**, the next day to Prosecutor Garcia submitted a Request for Warrant

for Plaintiff's arrest (ECF No. 4, PageID 68).

In the Request for Warrant, Defendant Oliver made the following false and

misleading statements constantly referring to Plaintiff as "Defendant Woodruff":

- Both front doors were open and both "Defendant Woodruff" and the male subject can be observed pulling and tugging on Mr. Walker who was in the driver seat (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

- "Defendant Woodruff" can be observed on video taking what appeared to be an item from Mr. Walker (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

- Mr. Walker stated to OIC Oliver, he believed he may have been drugged by "Defendant Woodruff" because he stated he has never felt the way he did that night, Mr. Walker stated he was dazing off several times, falling asleep, and just did not feel like himself and knows that just from consuming liquor would not make him feel the way he did while in the presence of Defendant Woodruff (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

These statements would make any individual believe that Defendant Oliver

without a doubt believed that the female subject was Plaintiff, but it was not.

Prosecutor Garcia approved the warrant, and Defendant Oliver submitted the

arrest warrant to the 36th District Court magistrate who signed the arrest warrant

(See Exhibit 10, Signed Arrest Warrant).

ARREST

On February 16, 2023, Plaintiff was arrested at her home in front of her family. She was taken to the Detroit Detention Center where she arrived around 8:20 a.m., and she was processed and booked (See Exhibit 11, Plaintiff's Video of Arrest). At the time of Plaintiff's arrest, Officer Sandra Perkins had in her hand a document that contained all of Plaintiff's personal and business information (See Exhibit 12, Intelligence Work-Up Documents). The documents contained all of Plaintiff's personal and business information. The documents also contained information on a license plate reader where Plaintiff's vehicle movement had been monitored by the Detroit Police Department (See Exhibit 12, Intelligence Work-Up Documents).

While at the Detroit Detention Center, Plaintiff was interviewed Defendant Oliver and she learned that Plaintiff was not the female subject because Plaintiff was eight months pregnant, and she had a distinguishable tattoo on her right arm that the female subject didn't have (ECF No. 4, PageID 71).

Despite knowing that Plaintiff was not involved in the robbery or carjacking, Defendant Oliver directed Plaintiff back to the holding cell (ECF No. 4, PageID 71).

Defendant Oliver claimed that after she left Plaintiff in the Detroit Detention Center, she attempted to contact someone from the prosecutor's office by

telephone to inform them that she didn't believe Plaintiff was the suspect because of her pregnancy and the tattoos on her right arm, but she was not able to reach any prosecutors.  Plaintiff was the wrong person (See Exhibit 13, LaShauntia Oliver Deposition Transcripts Page 45, Lines 22-24).

Defendant Oliver confirmed at her deposition that Plaintiff's tattoos did not match the female subject (See Exhibit 13, LaShauntia Oliver's Deposition Transcripts Page 42, Lines 12-23).

Plaintiff was arraigned approximately two hours after the interrogation by Defendant Oliver on the charges of robbery and carjacking. Plaintiff was given a $100,000.00 personal bond and was told not to leave the state by the magistrate (ECF No. 4, PageID 72).

Plaintiff was released from the Detroit Detention Center at approximately 7:00 p.m. (ECF No. 4, PageID 72).   Once released, Plaintiff learned that Defendant Oliver had possession of her cellphone despite knowing that Plaintiff had no involvement in the robbery or carjacking (ECF No. 4, PageID 73). Defendant Oliver claimed that the arresting officer had delivered Plaintiff's cell phone to her desk (See Exhibit 13, LaShauntia Oliver's Deposition Transcripts Page 55, Lines 9-13).

Plaintiff was taken to St. John's Hospital by her fiancé because she was suffering from stomach tightness and pain, whole body pains, headaches, and body

weakness (ECF No. 4-1, PageID 109-111). While at the hospital, Plaintiff was taken to an examination room for observation (ECF No. 4, PageID 72). Plaintiff was diagnosed with a low heart rate because of dehydration and given two bags of fluid intravenously (ECF No. 4, PageID 72). Plaintiff also learned that she was having contractions due to stress from that day's events (ECF No. 4, PageID 72). Plaintiff was discharged from the hospital and instructed to take medication, maintain a healthy diet, stay hydrated, and ensure ample rest to safeguard the well-being of her unborn child, who was impacted by the situation (ECF No. 4, PageID 72).

Hospital staff also told Plaintiff that her doctor would be in contact with her in the next 24 hours (ECF No. 4, PageID 73).

The following day February 17, 2023, Plaintiff contacted Defendant Oliver to have her cellphone returned. Defendant Oliver refused to release Plaintiff's cellphone to Plaintiff (ECF No. 4, PageID 73). Defendant Oliver informed Plaintiff that a warrant was being obtained to get a call detail from Xfinity Mobile to determine if Plaintiff was in the area when the robbery and carjacking occurred. (See Exhibit 14, Recorded Conversation of Defendant Oliver).

Later that day, Plaintiff was allowed to retrieve her cellphone. Plaintiff had to sign a release for her cellphone (See Exhibit 15, Property Release Form).

Defendant Oliver took a picture of Plaintiff displaying that she was eight months pregnant (See Exhibit 16, Plaintiff's Photo at the Police Station).

Also on February 17, 2023, Defendant Oliver claimed that she finally talked to Prosecutor Garrett Garcia, the same prosecutor that signed off on the carjacking warrant, and advised him that, "the woman in custody, Porcha Woodruff, is 34 weeks pregnant and cannot be the woman responsible for carjacking" (See Exhibit 17, Case Management Report).  According to Defendant Oliver, Prosecutor Garcia responded by stating that "he would update the case." Prosecutor sated to Defendant Oliver that he would look into to it, but not dismiss it (See Exhibit 13, LaShauntia Oliver Deposition Transcripts Page 54, Line 5-8).

On February 18, 2023, two days after Plaintiff's arrest, despite knowing Prosecutor Garrett Garcia's involvement in the case, Defendant Oliver prepared a search warrant for Plaintiff's cellphone and submitted the search warrant by email to an entirely different Prosecutor, Joe Kurly, who was not familiar with the case (See Exhibit 18, Cellphone Search Warrant to Prosecutor, Page 2, Paragraph 8). Despite knowing that Plaintiff was not the female subject, and that Plaintiff didn't match the physical characteristics because Plaintiff was eight months pregnant with a distinct tattoo on Plaintiff's upper right arm, Defendant Oliver surprisingly submitted the search warrant to Prosecutor Kurly omitting that Plaintiff was eight

months pregnant with a visible "rose" tattoo. Prosecutor Joe Kurly signed the search warrant (See Exhibit 18, Cellphone Search Warrant to Prosecutor).

On February 22, 2023, Defendant Oliver submitted the search warrant (approved by Prosecutor Kurly) in person to Judge Prentis Edwards at 1441 St. Antoine St., Detroit, MI 48226.

The search warrant that was submitted to Judge Edwards contained language that an alleged crime was being investigated (See Exhibit 19, Cellphone Search Warrant to Judge Page 1, Paragraph 1).

On February 27, 2023 (eleven days after Plaintiff's arrest), Plaintiff appeared for her Probable Cause Conference in the 36th District Court before the Honorable Aliyah Sabree (ECF No. 4, PageID 73).  At the Probable Cause Conference, the defense attorney inquired as to why the charges are not being dismissed since the Plaintiff was pregnant, and Defendant Oliver was supposed to contact the prosecutor's office to have the charges dismissed. The prosecutor responded by stating that, "I have no idea what you are talking about."  (See Exhibit 20, Transcript from P.C.C. Page 3-4).

On March 7, 2023, Plaintiff appeared for her Preliminary Examination, and the Wayne County Prosecutor's Office dismissed the case against Plaintiff for insufficient evidence (ECF No. 4, PageID 74).

# I.   LEGAL STANDARDS

We review a grant of summary judgment de novo. *Terry Barr Sales Agency, Inc*. v. *All-Lock Co.,* 96 F.3d, 174,178 (6ᵗʰ Cir. 1996).  "Under Rule 56(c), summary judgment is proper `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). "In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997).

## II.   ARGUMENT

### A. Whether Plaintiff's Federal and State Rights to be free from False Arrest and False Imprisonment Were Violated Where Officer LaShauntia Oliver Lacked Probable Cause to Request an Arrest Warrant for Plaintiff's Arrest

"A false arrest/false imprisonment claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes* v. *Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir.2005)).

In *Althers*, "an eyewitness identification will constitute sufficient probable cause 'unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness "was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation."'" *Althers v. Schebil,* 188 F.3d 365, 371 (6th Cir. 1999).

"Furthermore, officers cannot make hasty, unsubstantiated arrests with impunity.  Several cases both from this and other circuits, caution against incomplete, poorly conducted investigations. *Althers* at 370. (quoting *Kuehl v. Burtis,* 173 F.3d 646, 651 (8th Cir.1999)) (rejecting officer's qualified immunity defense where the officer ignored exculpatory evidence which would have negated a finding of probable cause); *Sevigny v. Dicksey,* 846 F.2d 953, 957-59 (4th Cir.1988)  *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986) ("A police officer

may not close her or his eyes to facts that would help clarify the circumstances of

an arrest."). *Althers* at 371.

First, Defendant Oliver had many reasons to question the Victim's credibility in

this matter for the following reasons:

- That the photo that Victim picked of Plaintiff was not a current photo of Plaintiff, it was eight-years old (ECF No. 4-1 PageID. 107);

- That the male suspect that the Victim chose, Daniel White, didn't fit the description of the male suspect (ECF No. 4-1 PageID. 107). Defendant Oliver didn't question the Victim about the different physical appearance;

- That Victim admitted that he had been drinking, and he was possibly drugged on the night of the incident (ECF No. 4-1 PageID. 94);

- That the Victim failed to inform Officers that he and the female subject had sexual intercourse the night of the incident (ECF No. 4-1 PageID. 96). This fact was not disclosed in prior interviews which goes to Victim's credibility.

The reasons listed alone should have made any reasonable officer pause and

challenge the Victim on the identification of Plaintiff.

Next, Defendant Oliver did not conduct any investigation in this matter.  On

January 31, 2023, when Defendant Oliver received the investigative lead from the

facial recognition match, the photo was placed in the six-pack line-up (ECF No. 4

PageID.67).  Once the Victim picked Plaintiff from the six-pack line-up,

Defendant Oliver ended her investigation after receiving Plaintiff's criminal

history.

- Defendant Oliver failed to visit Plaintiff's current residence to interview Plaintiff regarding the robbery and carjacking;

- Defendant Oliver failed to show Daniel White (male arrestee) who knew the female subject - Plaintiff's photo to confirm that Plaintiff was the female subject that Mr. White knew as Trinidad;

- Defendant Oliver failed to retrieve the female subject's cellphone number from Daniel White's cellphone.  Mr. White had told the officers that he had the female subject's cellphone number stored in his cellphone. Defendant Oliver could have compared the female subject's cellphone number to Plaintiff's cellphone number that Defendant Oliver had access to from the Intelligence Work-Up (See Exhibit 12, Intelligence Work-Up Documents);

- Defendant Oliver failed to visit Plaintiff at her place of business that Plaintiff had advertised on Facebook, and Defendant Oliver was aware of Plaintiff's business from the Intelligence Work-Up (See Exhibit 12, Intelligence Work-Up Documents);

- Defendant Oliver failed to go to the BP gas station to allow the gas station attendant to view Plaintiff's photo since the gas station attendant was familiar with the female subject. On January 31, 2023, Defendant Oliver received the facial recognition match and returned to the BP gas station a second time on February 2, 2023, **and Defendant Oliver still failed to show the gas station attendant Plaintiff's photo.**

Defendant Oliver was asked at her deposition what investigation did you

conduct as it relates to Porcha Woodruff.

17 Q. I'm asking you, how did
18     the investigation continue on Porcha Woodruff?
**19 A. She was positively ID'd.· From there, I looked at her**
**20     criminal history.· And then once she became a suspect**
**21     after he picked her out and said this is who he was**
**22     with, that's when I typed a warrant, arrest warrant.**

(See Exhibit 13, LaShauntia Oliver Deposition Transcripts Page 30, Line

17-22).

Basically, Defendant Oliver failed to conduct any investigation once the

Victim picked Plaintiff from the photo line-up.

> In *Ouza*, that court held that, [A]n allegation by one individual that another
> person committed a crime **without further corroboration** is insufficient to
> establish probable cause to arrest that person. At most, it gives an officer
> reasonable suspicion of criminal activity such that the officer would be
> justified in investigating further pursuant to *Terry v. Ohio,* 392 U.S. 1, 88
> S.Ct. 1868, 20 L.Ed.2d 889 (1968).  *Ouza v. City of Dearborn Heights,* 969
> F.3d 265, 282 (6th Cir. 2020).(quoting *Gardenhire v. Schubert,* 205 F.3d
> 303, 317 (6th Cir. 2000)).

In *Weser*, the court held that**, "probable cause does not exist when a

minimal further investigation would have exonerated the suspect**." *Weser v.

Goodson,* 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Kuehl* at 650).

If Defendant Oliver had taken a fifteen-minute drive to Plaintiff's home, and

knocked on Plaintiff's door, Defendant Oliver would have learned that Plaintiff

was eight months pregnant, and that Plaintiff could not have been the female

subject that was with the Victim prior to robbery and carjacking. Therefore, **since a

minimal further investigation would have exonerated Plaintiff, probable cause

did not exist.**

Arrest Warrant

Plaintiff, Porcha Woodruff, had absolutely nothing to do with this alleged

robbery and carjacking, but Plaintiff must still address the arrest warrant.

In cases involving search warrants, and in cases involving arrest warrants sought *prior* to an arrest, the law is clear that an officer may be held liable under 42 U.S.C. § 1983 for an illegal search or seizure when the officer "knowingly and deliberately, or with a reckless disregard for the truth" makes "false statements or omissions that create a falsehood" and "such statements or omissions are material, or necessary, to the finding of probable cause." *Peet v. City of Detroit,* 502 F.3d 557, 570 (6th Cir. 2007).(quoting *Wilson v. Russo,* 212 F.3d 781, 786-87 (3d Cir.2000)).

"When an affidavit contains false statements or material omissions, the question becomes whether, once the false statements are omitted and the omitted facts are inserted, the 'corrected affidavit' is still sufficient to establish probable cause." *Peet* at 570 (quoting *Wilson* at 789).

 "The point of the Fourth Amendment, **which often is not grasped by zealous officers**, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often-competitive enterprise of ferreting out crime." *Franks v. Delaware,* 438 U.S. 154,181; 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978),(quoting *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

17

It follows that a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence. *Wilson* at 787.

Omissions

"[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson* at 788. (quoting *United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir.1993)).

In this present matter, Defendant Oliver omitted key facts from the arrest warrant that any reasonable officer would have known that this was the kind of information that judge would wish to know.

- **That the photo that was placed in the six-pack line-up of Plaintiff was not a current photo of the Plaintiff.  The photo was eight-years old (ECF No. 4, PageID. 67).**

- That the male subject, Daniel White, who was arrested while driving the victim's stolen vehicle, stated during an interrogation that he was Facebook friends with the female subject after being shown her picture (See Exhibit 8, Daniel White Interrogation at DDC Video). Furthermore, Mr. White stated that her Facebook name was Trinidad Trinity. He also stated that he had the female subject's cellphone number stored in his cellphone (See Exhibit 8, Daniel White Interrogation at DDC Video). Defendant Oliver had access to Plaintiff's, Porcha Woodruff, Facebook page and was aware that Plaintiff's Facebook name was not Trinidad Trinity (See Exhibit 12, Intelligence Work-Up Documents, page 7).

18

- That the gas station attendant, Salma Bensouda, knew the female subject. When the female subject returned the victim's cellphone, she was allowed behind the bullet proof glass. The female subject and the gas station clerk had a nine-minute conversation where they laughed and joked.  The female was given free items by the gas station clerk prior to leaving (See Exhibit 4, January 30, 2023 BP gas station Video).

- That Plaintiff was a business owner, and that Defendant Oliver was aware that Plaintiff advertised and solicited her business on Facebook and that she didn't use the name Trinidad Trinity on Facebook (See Exhibit 12, Intelligence Work-Up Documents, page 7).

- That the Detroit Police Department had been monitoring Plaintiff's location through a license plate reader and that Plaintiff's vehicle never was in any area associated with this case (See Exhibit 12, Intelligence Work-Up Documents, page 4).

- **That Plaintiff, Porcha Woodruff, was eight months pregnant and that the victim in this case didn't state that the female subject was pregnant. Defendant Oliver might argue that she didn't know at the time she prepared the Request for Warrant that the Plaintiff was eight months pregnant. That is the danger Defendant Oliver faces when she does not conduct a proper investigation.**

If any of these omissions were inserted into the Request for Warrant, probable cause would have been lacking.

## Assertions

Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details — recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth. In applying the reckless disregard test to assertions, we have

19

borrowed from the free speech arena and equated reckless disregard for the truth with a "high degree of awareness of [the statements'] probable falsity." *Wilson* at 788 (Quoting *Lippay v. Christos,* 996 F.2d 1490, 1501 (3d Cir.1993))( *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)).

An assertion is made with reckless disregard when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson* at 777.

Defendant Oliver "knowingly and deliberately, or with a reckless disregard for the truth" made "false statements that create a falsehood.  These statements created a falsehood:

- Both front doors were open and both "Defendant Woodruff" and the male subject can be observed pulling and tugging on Mr. Walker who was in the driver seat (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

- "Defendant Woodruff" can be observed on video taking what appeared to be an item from Mr. Walker (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

- Mr. Walker stated to OIC Oliver, he believed he may have been drugged by "Defendant Woodruff" because he stated he has never felt the way he did that night, Mr. Walker stated he was dazing off several times, falling asleep, and just did not feel like himself and knows that just from consuming liquor would not make him feel the way he did while in the presence of "Defendant Woodruff" (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

These statements were false and misleading.  Any individual reading these statements would have believed that the female subject was Plaintiff, Porcha Woodruff.

Therefore, if these false statements were removed from the arrest warrant, probable cause could not have been established.

As for the state count of false arrest and false imprisonment, "To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, and not based on probable cause."  *Wolfe v. Perry,* 412 F.3d 707, 715 (6th Cir. 2005) (quoting *Peterson Novelties, Inc. v. City of Berkley,* 259 Mich.App. 1, 672 N.W.2d 351, 362 (2003).

Since the Michigan law is similar to the Federal law for false arrest and false imprisonment, Plaintiff will rely on her arguments made under Federal law regarding her State claims for false arrest and false imprisonment.

In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is **only one reasonable determination possible**. " *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Defendant Oliver without a doubt lacked probable cause to request an arrest warrant for Plaintiff; therefore, this matter is not a question for a jury to decide because there is **only one reasonable determination possible.**

**B. Whether Plaintiff's Federal and State Rights to be free from Malicious Prosecution Were Violated Where Officer LaShauntia Oliver Lacked Probable Cause to Request an Arrest Warrant For Plaintiff's Arrest**

To succeed on a malicious-prosecution claim under § 1983, a plaintiff must prove the following:

First the defendant made, influenced, or participated in the decision to prosecute the plaintiff; "the term `participated' should be construed within the context of tort causation principles. Its meaning is akin to `aided.' To be liable for `participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating. *Sykes* v. *Anderson*, 625 F.3d 294, 308 (6th Cir. 2010).

Defendant Oliver made, influenced, and participated in the decision to prosecute Plaintiff. Defendant Oliver requested the warrant for Plaintiff's arrest leading to her criminal charges, so this first element has been met.

Second, there was no probable cause for the criminal prosecution. *Sykes* at 308. To address whether there was probable cause, Plaintiff will rely on her arguments set forth in her false arrest/false imprisonment claims above.

Third, as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest. *Sykes* at 308.

On February 16, 2023, after Plaintiff was arrested, she was arraigned and given a $100,000 personal bond, and was ordered not to leave the state (ECF No. 4, PageID 71-72).

On February 28, 2023, Plaintiff was also required to attend a probable cause conference where a preliminary examination was scheduled (ECF No. 4, PageID 71-72).

Finally, on March 7, 2023, Plaintiff was required to attend a preliminary examination (ECF No. 4, PageID 74).  For the reasons stated, Plaintiff has demonstrated that a deprivation of her liberty apart from the initial arrest occurred.

Fourth, the criminal proceeding was resolved in the plaintiff's favor. *Sykes* at 308-09.  To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need not show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that his prosecution ended without a conviction. *Thompson* v. *Clark,* 596 U. S. 36, 142 S. Ct. 1332 (2022).

A Michigan state court held that, dismissal of criminal charges at the request of the prosecution . . . is a termination of proceedings in favor of the accused. *Cox* v *Williams*, 233 Mich App 388, 393; 593 NW2d 173 (1999).

On March 7, 2023, all charges against Plaintiff were dismissed without prejudice (ECF No. 4, PageID 74).  Therefore, Plaintiff has satisfied this element as the charges were terminated in her favor.

In *Sykes,* the court recognized that a showing of "malice" is not necessarily essential to a malicious prosecution claim under the Fourth Amendment. *Sykes* at 309.

We again will rely on the argument set forth under the Federal malicious prosecution claim for the State malicious prosecution claim.  However, Michigan courts require a finding of malice.

In Michigan, an action for malicious prosecution, the plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his action, and (4) **that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice.** *Matthews v. Blue Cross & Blue Shield of Michigan,* 456 Mich. 365, 378, 572 N.W.2d 603 (1998).

In Michigan, "[w]hen a party is sued for malicious prosecution, a jury may infer malice from an absence of probable cause." *Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585, 617 (1981). A jury could find that Detective Oliver didn't have

probable cause for an arrest warrant. Therefore, both Federal and State claims for

malicious prosecution have been satisfied.

## CONCLUSION

For the above state reasons, Plaintiff, Porcha Woodruff, respectfully request

that this Honorable Court grant Plaintiff's Motion for Summary Judgment and

award damages, attorney fees and any other relief this court deems appropriate.


Dated: November 8, 2024                          Respectfully Submitted,


                                                 /s/Ivan L. Land
                                                 Ivan L. Land (P65879)
                                                 Law Offices of Ivan L. Land,
                                                 P.C. 25900 Greenfield Rd.,
                                                 Suite 210 Oak Park, MI 48237-
                                                 1267 248.968.4545 / (f)
                                                 248.968.4540 ill4law@aol.com
                                                 **Attorney for PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Motion and Brief in Support of Plaintiff's Motion for Summary Judgment with the Court Clerk via CM/ECF on November 8, 2024, to serve all parties.


Dated: November 8, 2024                     Respectfully Submitted,


                                            /s/Ivan L. Land
                                            Ivan L. Land (P65879)