## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PORCHA WOODRUFF,

an individual,                                    Case No. 5:23-cv-11886

Plaintiff,                              Hon. Judith E. Levy

V

~~CITY OF DETROIT~~

~~a municipal corporation,~~

LaSHAUNTIA OLIVER,

City of Detroit Police Detective,
Individually, and in her Official
Capacities, and

Defendant.

---

## MOTION AND BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

i

## TABLE OF CONTENTS

*PRIMARY CONTROLLING AUTHORITY* .................................................................... iii

*ISSUES PRESENTED* ........................................................................................ iv

*I.* *LEGAL STANDARDS* ................................................................................... 9

*II.* *ARGUMENT* .......................................................................................... 10

    **1. WHETHER THE COURT SHOULD GRANT SUMMARY JUDGMENT AS TO PLAINTIFF'S FALSE ARREST/FALSE IMPRISONMENT CLAIMS BECAUSE PROBABLE CAUSE EXISTED FOR HER ARREST AND OFFICER OLIVER IS ENTITLED TO QUALIFIED IMMUNITY.** ...................................................................... 10

    **2. WHETHER SUMMARY JUDGEMENT SHOULD BE GRANTED AS TO PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS WHERE HER CASE WAS VOLUNTARILY DISMISSED AND /OR WHERE PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST AND OFFICER OLIVER IS ENTITLED TO QUALIFIED IMMUNITY AND/OR THRE IS NO EVIDENCE OFFICER OLIVER ACTED WITH MALICE.** .................................................................... 17

    **3. WHETHER SUMMARY JUDGEMENT SHOULD BE GRANTED AS TO PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS WHERE PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST AND/OR OFFICER OLIVER CONDUCT WAS NOT EXTREME OR OUTRAGEOUS AND PLAINTIFF CANNOT SHOW INENT OR RECKLESSNESS.** ..................................... 22

*CONCLUSION* ............................................................................................... 25

# PRIMARY CONTROLLING AUTHORITY

**Cases**

*Beck v. Ohio*, 379 U.S. 89, 90-91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142 (1964) ........................ 16

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................. 9

*Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995) .................................................. 16, 21

*Cox v. Williams*, 233 Mich App 388, 393; 593 NW2d 173 (1999). ............................................. 18

*Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996) ............................................... 16, 20

*Doe v. Mills,* 212 Mich App 73, 91; 536 NW2d 824 (1995) ........................................................ 23

*Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir. 1997) ............................................................. 16

*Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585, 617 (1981) ............................................... 19

*Gardenhire v. Schubert,* 205 F.3d 303, 317 (6th Cir. 2000) ....................................................... 10

*Graham v. Ford,* 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999) .................................... 22, 23

*Harris v Bornhorst,* 513 F.3d 503, 515 (6th Cir. 2008) .......................................................... 13, 14

*Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ...................... 19

*Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) ...................................................... 17

*Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999) ................................................................... 11

*Linebaugh v Sheraton Michigan Corp.*, 198 Mich App 335, 342-343; 497 NW2d 585 (1993)... 23

*Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997) ..................................................... 9

*Ouza v. City of Dearborn Heights,* 969 F.3d 265, 282 (6th Cir. 2020) ...................................... 10

*Peet v. City of Detroit,* 502 F.3d 557, 570 (6th Cir. 2007) ........................................................ 11

*Roberts v. Auto-Owners Ins. Co.,* 422 Mich. 594, 603, 374 N.W.2d 905 (1985) ........................ 23

*Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).................... 16, 21

*Sykes* v. *Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) .......................................................... passim

*Terry Barr Sales Agency, Inc.* v. *All-Lock Co.,* 96 F.3d, 174,178 (6th Cir. 1996). ........................ 9

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ............................................. 10

*Thompson* v. *Clark,* 596 U. S. 36, 142 S. Ct. 1332 (2022) .......................................................... 18

*United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir.1993) .................................................... 11

*United States v. McClain,* 444 F.3d 556, 563 (6th Cir.2005) ..................................................... 14

*Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir.2005) ............................... 10

*Walsh v. Taylor,* 263 Mich.App. 618, 634, 689 N.W.2d 506 (2004) .......................................... 22

*Webb v. United States,* 789 F.3d 647, 659-660 (6th Cir. 2015) .................................................. 21

*Weser v. Goodson,* 965 F.3d 507, 513 (6th Cir. 2020) ............................................................... 11

*Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir.2000) .................................................................... 11

*Wong Sun v. United States*, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ................. 14

**Other Authorities**
Restatement Torts, 2d, § 46, comment d, pp. 72-73 ..................................................................... 23

**Rules**
Fed.R.Civ.P. 56(c) ........................................................................................................................ 9

## ISSUES PRESENTED

**1.    Whether the Court Should Grant Summary Judgment As To Plaintiff's False Arrest/False Imprisonment Claims Because Probable Cause Existed For Her Arrest And Officer Oliver is Entitled to Qualified Immunity.**

Plaintiff states: No
Defendant states: Yes

**2.    Whether Summary Judgement Should Be Granted As To Plaintiff's Malicious Prosecution Claims Where Her Case Was Voluntarily Dismissed And /Or Where Probable Cause Existed For Plaintiff's Arrest And Officer Oliver Is Entitled To Qualified Immunity And/Or There Is No Evidence Officer Oliver Acted With Malice.**

Plaintiff states: No
Defendant states: Yes

**3.    Whether Summary Judgement Should Be Granted As To Plaintiff's Intentional Infliction Of Emotional Distress Claims Where Probable Cause Existed For Plaintiff's Arrest And/Or Officer Oliver Conduct Was Not Extreme or Outrageous And Plaintiff Cannot Show Intent Or Recklessness.**

Plaintiff states: No
Defendant states: Yes

**4.    Plaintiff is no longer prosecuting the claim for Elliot-Larsen.**

## STATEMENT OF FACTS

On January 29, 2023, Laurence Walker (hereinafter "Victim") reported to the Detroit Police Department that he had been robbed at gunpoint for his personal property and his vehicle (ECF No. 4, PageID 64).

Victim stated that he dropped off a woman that he had spent the day with and got robbed and carjacked at gun point by a black male (ECF No. 25-1, Page ID. 789, Gregory Scouten In-Car Video-4:18 to 4:40). Victim stated that he didn't know the female subject (ECF No. 25-1, PageID 789, Gregory Scouten In-Car Video, 9:20-9:34)

Victim admitted he was under the influence of alcohol and potentially drugs at the time of the incident (ECF No. 4-1, PageID 94).

On January 30, 2023, officer in charge LaShauntia Oliver (hereinafter "Defendant Oliver") from the commercial auto theft unit of the Detroit Police Department was assigned Victim's case (ECF No. 4, PageID 64).

On January 31, 2023, Defendant Oliver contacted Victim, and Victim informed Defendant Oliver that his cellphone had been returned to 6240 Van Dyke Detroit, MI 48213 (hereinafter "BP gas station") the day prior. The Victim told Defendant Oliver that his cellphone was returned to the BP gas station by a female (ECF No. 4, PageID 64).

1

On January 31, 2023, Defendant Oliver went to the BP gas station to view the video footage from the day prior (January 30, 2024), to determine the identity of the female who returned the cellphone to the gas station (ECF No. 4, PageID 65).

The January 30, 2023 video footage depicted female subject being allowed into a secure area behind the bullet proof glass for nine minutes returning Victim's cellphone to the BP gas station attendant (ECF No. 25-1, PageID 791, January 30, 2023 BP gas station Video-3:56).   The female subject and the gas station attendant were familiar with each other.

On February 1, 2023, Defendant Oliver submitted an AVERT request to members of the Detroit Police Department to extract the video footage from January 30, 2023 of the female subject returning the cellphone to the BP gas station (ECF No. 4, PageID 65).  Facial recognition returned a match for Plaintiff (Porcha Woodruff) (ECF No. 4, PageID 65).

At the time the facial recognition match was given to Defendant Oliver, Defendant Oliver was given a document by Nathan Howell, crime analyst, which stated that the facial recognition result is an investigative lead, and should not be used as probable cause (ECF No. 25-1, PageID 795, Nathan Howell's Case Supplemental Report).

The photo that the facial recognition generated for Plaintiff was from a 2019 mug shot of Plaintiff. The photo stated "Investigative Lead" (ECF No. 25-1, PageID 797, Facial Recognition Document).

On February 2, 2023, Defendant Oliver had a second interview with Victim, and learned that he met a female named Trinidad at the Hoover Market on January 29, 2023 and had sex with her (ECF No. 4-1, PageID 96). This information regarding the female subject and the Victim having sex was not disclosed by the Victim in prior interviews. Defendant Oliver also learned that the Victim and the female subject were at that same BP gas station the night of the incident (ECF No. 4-1, PageID 96).

Once Defendant Oliver learned that the Victim and the female were at that BP gas station the night of the alleged robbery and carjacking, Defendant Oliver went back to the BP gas station a second time to view the video footage from January 29, 2023, the night of the alleged incident (ECF No. 4, PageID 66)(ECF No. 25-1, PageID 793, January 29, 2023 BP Gas Station Video).

Also on February 2, 2023, a black male, Daniel White, ("hereinafter Mr. White") was arrested driving Victim's stolen vehicle (ECF No. 4-1, PageID 98). The description of Mr. White was 5'10, 190 lbs., light complexion, bald head (ECF No. 4-1, PageID 98-99).

While in custody, Mr. White was interrogated by Officer Ned Gray and Officer Quentin Glover. Mr. White was shown a photo of the female subject and he knew her as "Trinidad" (ECF No. 25-1, PageID 799, Daniel White's Interrogation at DDC Video-13:45), and he also informed the officers that he had the female subject's cellphone number stored in his cellphone (ECF No. 25-1, PageID 799, Daniel White's Interrogation at DDC Video-13:55). Mr. White stated that the female subject's Facebook name was Trinidad Trinity and they are Facebook friends (ECF No. 25-1, PageID 799, Daniel White Interrogation at DDC Video-15:10).

On February 3, 2023, the Victim went to participate in a photo line-up for the female subject at the Detroit Detention Center (ECF No. 4-1, PageID 106). The photo that was used in the six-pack line-up was not the photo that was generated through the facial recognition match. The photo was a 2015 mug shot. At the time, the photo was approximately eight-years old (ECF No. 4-1, PageID 107).

Prior to viewing the six-pack line-up, Victim was given a document titled "Lineup Instructions." The document stated the following:

> "You should not feel compelled to make an identification. The investigation will continue whether or not you select someone. **If you make a selection of an individual who is ultimately not involved in the crime, that individual will not incur any charges or police action just because you selected them**" (ECF No. 25-1, PageID 801, Lineup Instructions).

Victim stated in the Victim/Witness Photographic Lineup Statement, "I picked #2 based on seeing the individual in person for multiple hours prior to me being carjacked (ECF No. 4-1, PageID 106).

The Victim has never alleged that the female subject robbed or carjacked him."  The Victim stated that, **"The female Trinidad was just standing in the street not doing anything to help."**  (ECF No. 4-1, PageID 97).  After the Victim picked Plaintiff in the photo line-up, Defendant Oliver, **without doing any investigation**, the next day submitted a Request for Warrant for Plaintiff's arrest to Prosecutor Garcia (ECF No. 4, PageID 68).

In the Request for Warrant, Defendant Oliver made false and misleading statements constantly referring to Plaintiff as "Defendant Woodruff" (ECF No. 4-1, PageID. 86-87).

Prosecutor Garcia approved the warrant, and Defendant Oliver submitted the approved arrest warrant to the 36th District Court magistrate who signed the arrest warrant (ECF No. 25-1, PageID 803, Signed Arrest Warrant).

ARREST

On February 16, 2023, Plaintiff was arrested at her home in front of her family. She was taken to the Detroit Detention Center where she arrived around 8:20 a.m., and she was processed and booked (ECF No. 25-1, PageID 805, Plaintiff's Video of Arrest).

While at the Detroit Detention Center, Plaintiff was interviewed by Defendant Oliver and she learned that Plaintiff was not the female subject because Plaintiff was eight months pregnant, and she had a distinguishable tattoo on her right arm that the female subject did not have (ECF No. 4, PageID 71).

Despite knowing that Plaintiff was not involved in the robbery or carjacking, Defendant Oliver directed Plaintiff back to the holding cell (ECF No. 4, PageID 71).

Defendant Oliver confirmed at her deposition that Plaintiff's tattoos did not match the female subject because the female subject didn't have a tattoo (See Exhibit 13, LaShauntia Oliver's Deposition Transcripts Page 42, Lines 12-23 | To Be Filed Manually).

Plaintiff was arraigned approximately two hours after the interrogation by Defendant Oliver on the charges of robbery and carjacking. Plaintiff was given a $100,000.00 personal bond and was told not to leave the state by the magistrate (ECF No. 4, PageID 72).

Plaintiff was released from the Detroit Detention Center at approximately 7:00 p.m. (ECF No. 4, PageID 72).  Once released, Plaintiff learned that Defendant Oliver had possession of her cellphone despite knowing that Plaintiff had no involvement in the robbery or carjacking (ECF No. 4, PageID 73).

6

Plaintiff was taken to St. John's Hospital by her fiancé because she was suffering from stomach tightness and pain, whole body pains, headaches, and body weakness (ECF No. 4-1, PageID 109-111). While at the hospital, Plaintiff was taken to an examination room for observation (ECF No. 4, PageID 72). Plaintiff was diagnosed with a low heart rate because of dehydration and given two bags of fluid intravenously (ECF No. 4, PageID 72). Plaintiff also learned that she was having contractions due to stress from that day's events (ECF No. 4, PageID 72). Plaintiff was discharged from the hospital and instructed to take medication, maintain a healthy diet, stay hydrated, and ensure ample rest to safeguard the well-being of her unborn child, who was impacted by the situation (ECF No. 4, PageID 72).

The following day February 17, 2023, Plaintiff contacted Defendant Oliver to have her cellphone returned. Defendant Oliver refused to release Plaintiff's cellphone to Plaintiff (ECF No. 4, PageID 73). Defendant Oliver informed Plaintiff that a warrant was being obtained to get a call detail from Xfinity Mobile to determine if Plaintiff was in the area when the robbery and carjacking occurred. (ECF No. 25-1, PageID 822, Recorded Conversation of Defendant Oliver).

Later that day, Plaintiff was allowed to retrieve her cellphone. Plaintiff had to sign a release for her cellphone (ECF No. 25-1, PageID 824, Property Release Form).

On February 18, 2023, two days after Plaintiff's arrest, despite knowing Prosecutor Garrett Garcia's involvement in the case, Defendant Oliver prepared a search warrant for Plaintiff's cellphone and submitted the search warrant by email to an entirely different Prosecutor, Joe Kurly, who was not familiar with the case (ECF No. 25-1 PageID 830, Cellphone Search Warrant to Prosecutor, Page 2, Paragraph 8). Despite knowing that Plaintiff was not the female subject, and that Plaintiff didn't match the physical characteristics because Plaintiff was eight months pregnant with a distinct tattoo on Plaintiff's upper right arm, Defendant Oliver surprisingly submitted the search warrant to Prosecutor Kurly omitting that Plaintiff was eight months pregnant with a visible "rose" tattoo. Prosecutor Joe Kurly signed the search warrant (ECF No. 25-1, PageID 830, Cellphone Search Warrant to Prosecutor).

On February 22, 2023, Defendant Oliver submitted the search warrant (approved by Prosecutor Kurly) in person to Judge Prentis Edwards at 1441 St. Antoine St., Detroit, MI 48226.

The search warrant that was submitted to Judge Edwards contained language that an alleged crime was being investigated and Plaintiff was the suspect (ECF No. 25-1, PageID 834, Cellphone Search Warrant to Judge Page 1, Paragraph 1).

On February 27, 2023 (eleven days after Plaintiff's arrest), Plaintiff appeared for her Probable Cause Conference in the 36th District Court before the Honorable Aliyah Sabree (ECF No. 4, PageID 73).

On March 7, 2023, Plaintiff appeared for her Preliminary Examination, and the Wayne County Prosecutor's Office dismissed the case against Plaintiff for insufficient evidence (ECF No. 4, PageID 74).

## LEGAL STANDARDS

We review a grant of summary judgment de novo. *Terry Barr Sales Agency, Inc*. v. *All-Lock Co.,* 96 F.3d, 174,178 (6th Cir. 1996).  "Under Rule 56(c), summary judgment is proper `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). "In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997).

# I.   ARGUMENT

**1.   WHETHER THE COURT SHOULD GRANT SUMMARY JUDGMENT AS TO PLAINTIFF'S FALSE ARREST/FALSE IMPRISONMENT CLAIMS BECAUSE PROBABLE CAUSE EXISTED FOR HER ARREST AND OFFICER OLIVER IS ENTITLED TO QUALIFIED IMMUNITY.**

"A false arrest/false imprisonment claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes* v. *Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir.2005)).

In this matter Defendant Oliver lacked probable to arrest Plaintiff. Basically, Defendant Oliver failed to conduct any investigation once the Victim picked Plaintiff from the photo line-up. Defendant Oliver relied on the identification - although she had a signed agreement with the Victim stating,

> **"If you make a selection of an individual who is ultimately not involved in the crime, that individual will not incur any charges or police action just because you selected them"** (ECF No. 25-1, PageID 801, Lineup Instructions)."

In *Ouza*, that court held that, [A]n allegation by one individual that another person committed a crime **without further corroboration** is insufficient to establish probable cause to arrest that person. At most, it gives an officer reasonable suspicion of criminal activity such that the officer would be justified in investigating further pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  *Ouza v. City of Dearborn Heights,* 969 F.3d 265, 282 (6th Cir. 2020).(quoting *Gardenhire v. Schubert,* 205 F.3d 303, 317 (6th Cir. 2000)).

10

In *Weser*, the court held that**, "probable cause does not exist when a minimal further investigation would have exonerated the suspect**." (*Weser v. Goodson,* 965 F.3d 507, 513 (6th Cir. 2020)( *Kuehl v. Burtis,* 173 F.3d 646, 650 (8th Cir. 1999)),

If Defendant Oliver had drove fifteen minutes to Plaintiff's house or even conducted surveillance on Plaintiff's vehicle since the Detroit Police was monitoring Plaintiff's vehicle through a license plate tracker, Defendant Oliver would have learned that Plaintiff was eight months pregnant and was not the female subject. Therefore, a minimal investigation would have cleared Plaintiff, and probable cause could not have been established.

"When an affidavit contains false statements or material omissions, the question becomes whether, once the false statements are omitted, and the omitted facts are inserted, the 'corrected affidavit' is still sufficient to establish probable cause." *Peet v. City of Detroit,* 502 F.3d 557, 570 (6th Cir. 2007),( *Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir.2000).

### Omissions

"[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Wilson* at 788. (quoting *United States v. Jacobs,* 986 F.2d 1231, 1235 (8th Cir.1993)).

11

In this present matter, Defendant Oliver omitted key facts from the arrest warrant that any reasonable officer would have known that this was the kind of information that the judge would wish to know.

- **That the photo that was placed in the six-pack line-up of Plaintiff was not a current photo of the Plaintiff.  The photo was eight-years old (ECF No. 4, PageID. 67).**

- **That Defendant Oliver obtained Plaintiff's criminal history record which indicated that Plaintiff had a tattoo on her right arm. (See 1, Plaintiff's criminal History). According to Defendant Oliver the female subject didn't have a tattoo.**

- **That Plaintiff, Porcha Woodruff, was eight months pregnant and that the Victim in this case didn't state that the female subject was pregnant. Defendant Oliver might argue that she didn't know at the time she prepared the Request for Warrant that the Plaintiff was eight months pregnant. That is the danger Defendant Oliver faces when she does not conduct a proper investigation.**

If any of these omissions were inserted into the Request for Warrant, probable cause could not have been established.

Assertions

An assertion is made with reckless disregard when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Wilson* at 788.

12

Defendant Oliver "knowingly and deliberately, or with a reckless disregard for the truth" made "false statements that create a falsehood."  These statements created a falsehood:

- Both front doors were open and both "Defendant Woodruff" and the male subject can be observed pulling and tugging on Mr. Walker who was in the driver seat (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

- "Defendant Woodruff" can be observed on video taking what appeared to be an item from Mr. Walker (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

- Mr. Walker stated to OIC Oliver, he believed he may have been drugged by "Defendant Woodruff" because he stated he has never felt the way he did that night, Mr. Walker stated he was dazing off several times, falling asleep, and just did not feel like himself and knows that just from consuming liquor would not make him feel the way he did while in the presence of "Defendant Woodruff" (ECF No. 4-1, PageID. 87, paragraph 1, lines 9-15).

These statements were false and misleading.  Any individual reading these statements would have believed that the female subject was Plaintiff, Porcha Woodruff.  These statements should have never been placed in the request for the arrest warrant.

Therefore, if these false statements were removed from the arrest warrant, probable cause could not have been established.

Next, we turn to mere presence. [It] is well-established that an individual's mere presence at a crime scene does not constitute probable cause for an arrest. *Harris v Bornhorst*, 513 F.3d 503, 515 (6th Cir. 2008).

13

The Victim in this case stated that the female subject, **"Trinidad was just standing in the street not doing anything to help."** (ECF No. 4-1, PageID 97). Despite this assertion made by the Victim, Defendant Oliver made a unilateral decision to seek an arrest warrant for the female subject.

The Supreme Court has made clear that a probable cause finding may not be based "upon information too vague and from too untested a source." (*Harris* at 515 quoting *Wong Sun v. United States*, 371 U.S. 471, 482, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).

The *Sykes* court held that, "Speculation does not equate to probable cause," (*Sykes* at 308 quoting *United States v. McClain,* 444 F.3d 556, 563 (6th Cir.2005)).

There was no evidence that any female committed any crime in this matter let alone armed robbery and carjacking. Defendant Oliver and her attorney use the word "If" to establish that the female subject committed a crime in this matter.

(See Exhibit 13, LaShauntia Oliver's Deposition Transcripts Page 134-135 , Lines 17-21 | To Be Filed Manually).

17   BY MR. LAND
18 Q.   Do me a favor.· You remember going through all of this,
19       right?· We went through a lot. Do you remember reading
20       any statement that involves the female in this case in a
21       carjacking or armed robbery?
22 A.  **Um --**
23 Q.  Any statement.
24 A.  **Yes. When he -- on the six pack, that sheet right there**
25       **where he said he was with her for hours, and that's the**
Page 135
1        **same female that he explained that he was with for hours**

14

2      **prior to the carjacking and up until the carjacking took**
3      **place.**
4   Q.   Okay.· So what is that?
5   A.   **An accessory to a carjacking.**
6        MR. LAND:· Okay. No further questions.
7           RE-EXAMINATION
8   BY MR. PADDISON:
9   Q.   Couple quick followups.
10          Carjacking is a crime, correct?
11  A.   **Yes.**
12  Q.   **"If"**someone were to drug a potential mark, such as our
13       victim in this case and then lead them to a location
14       where they were to be carjacked, would that constitute
15       being an accessory?
16  A.   **Yes.**
17· Q.   Is that a crime?
18.         MR. LAND:  Objection.
19· BY MR. PADDISON:
20· Q.   And is that a crime?
21· A.   **Yes**

There is absolutely no evidence that the Victim in this case was drugged.

The Victim was even examined at the hospital (See Exhibit 2) and there is no

indication that he was drugged.

   **Speculation does not equate to probable cause.**  Therefore, Defendant

Oliver had no reason to seek an arrest warrant for **any** female in this matter - let

alone Plaintiff, Porcha Woodruff.

   Finally, Defendant Oliver is not entitled to Qualified Immunity. Qualified

immunity involves a two-step inquiry. First, the court must determine whether,

based upon the applicable law, the facts viewed in the light most favorable to the

plaintiffs show that a constitutional violation has occurred.  If the court finds a

constitutional violation, it must then consider whether the violation involved "clearly established constitutional rights of which a reasonable person would have known.'" *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996) (quoting *Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995)); *see also Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

Plaintiff's constitutional right was violated when Defendant Oliver caused Plaintiff to be arrested without probable cause. It is clearly established that an arrest without probable cause violates the Fourth Amendment. (*Donovan v. Thames,* 105 F.3d 291, 298 (6th Cir. 1997)(quoting *Beck v. Ohio*, 379 U.S. 89, 90-91, 85 S.Ct. 223, 225-26, 13 L.Ed.2d 142 (1964)).  Therefore, Defendant Oliver is not entitled to qualified immunity because she violated Plaintiff's constitutional right and the violation was clearly established at the time.

Defendant Oliver further argues that she was not responsible for personally committing the alleged violation.  If a police officer has been instrumental in plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decision of prosecutors or grand jurors or magistrates to confine or prosecute him. The officer cannot hide behind the officials whom they have

**defrauded**. *Sykes* v. *Anderson*, 625 F.3d 294, 307 (6th Cir. 2010) quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988).

**2.      WHETHER SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S MALICIOUS PROSECUTION CLAIMS WHERE HER CASE WAS VOLUNTARILY DISMISSED AND /OR WHERE PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST AND OFFICER OLIVER IS ENTITLED TO QUALIFIED IMMUNITY AND/OR THERE IS NO EVIDENCE OFFICER OLIVER ACTED WITH MALICE.**

To succeed on a malicious-prosecution claim under § 1983, a plaintiff must prove the following:

First the defendant made, influenced, or participated in the decision to prosecute the plaintiff; "the term `participated' should be construed within the context of tort causation principles. Its meaning is akin to `aided.' To be liable for `participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating. *Sykes* at 308.

Defendant Oliver made, influenced, and participated in the decision to prosecute Plaintiff. Defendant Oliver requested the warrant for Plaintiff's arrest leading to her criminal charges, so this first element has been met.

Second, there was no probable cause for the criminal prosecution. *Sykes* at 308. Plaintiff will rely on her probable cause analysis stated in her false arrest/false imprisonment argument.

Third, as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest. *Sykes* at 308.

On February 16, 2023, after Plaintiff was arrested, she was arraigned and given a $100,000 personal bond, and was ordered not to leave the state (ECF No. 4, PageID 71-72). On February 28, 2023, Plaintiff was also required to attend a probable cause conference where a preliminary examination was scheduled (ECF No. 4, PageID 71-72). Plaintiff did suffer a deprivation of liberty apart from the initial arrest.

Fourth, the criminal proceeding was resolved in the plaintiff's favor. *Sykes* at 308-09.  To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need not show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that his prosecution ended without a conviction. *Thompson* v. *Clark,* 596 U. S. 36, 142 S. Ct. 1332 (2022).

A Michigan state court held that, dismissal of criminal charges at the request of the prosecution . . . is a termination of proceedings in favor of the accused. *Cox v. Williams*, 233 Mich App 388, 393; 593 NW2d 173 (1999).

On March 7, 2023, all charges against Plaintiff were dismissed without prejudice (ECF No. 4, PageID 74).  Therefore, Plaintiff has satisfied this element as the charges were terminated in her favor.

18

In *Sykes,* the court recognized that a showing of "malice" is not necessarily essential to a malicious prosecution claim under the Fourth Amendment. *Sykes* at 309.

In Michigan, "[w]hen a party is sued for malicious prosecution, a jury may infer malice from an absence of probable cause." *Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585, 617 (1981). A jury could find that Detective Oliver didn't have probable cause for an arrest warrant. Therefore, a jury could find malice in Defendant Oliver's conduct so this element has been satisfied.

Defendant Oliver stated that, the Preliminary Examination serves as the dividing line between claims of false arrest or imprisonment, and those of malicious prosecution. This statement made is not true. The arraignment is the dividing line.

> "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or **arraignment**, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."
>
> *Heck v. Humphrey,* 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Defendant Oliver further states that, miscommunication in the prosecutor's office led to Plaintiff's Preliminary Examination being adjourned. Plaintiff's Preliminary Examination was never adjourned.  In this matter, Plaintiff's Probable

19

Cause Conference was scheduled for February 27, 2023 (ECF No. 4, PageID 73). At the Probable Cause Conference, Plaintiff asked to have her scheduled Preliminary Examination when she learned that Detective Oliver failed to contact the prosecution regarding the fact that she was not the female subject.

To reiterate, there was no adjournment of the Preliminary Examination as Defendant Oliver would like for this court to believe. Defendant Oliver stated that Plaintiff was not prosecuted; therefore, she cannot maintain a malicious prosecution claim. Plaintiff was prosecuted in this matter.

Plaintiff was arraigned on February 16, 2023, where she was given a $100,000 personal bond, and told not to leave the state (ECF No. 4, PageID 71-72). On February 27, 2023, she appeared at her Probable Cause Conference, and told to return March 7, 2024, for her Preliminary Examination (ECF No. 4, PageID 73). For Defendant Oliver to make this outlandish statement that Plaintiff was not prosecuted is puzzling.

Finally, Defendant Oliver is not entitled to Qualified Immunity. Qualified immunity involves a two-step inquiry. First, the court must determine whether a constitutional violation has occurred. If the court finds a constitutional violation, it must then consider whether the violation involved "clearly established constitutional rights of which a reasonable person would have known.'" *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996) (quoting *Christophel v.*

20

*Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995)); *see also Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

A constitution violation occurred as Defendant Oliver had no probable cause to prosecute Plaintiff.  Furthermore, Defendant Oliver allowed this malicious prosecution to continue where she was aware probable cause didn't exist.

Plaintiff will rely on the lack of probable cause discussed in the false arrest/false imprisonment argument.

At the time the constitutional violation occurred, Defendant Oliver knew that she was violating Plaintiff's rights. Individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has "made, influenced, or participated in the decision to prosecute the plaintiff" by, for example, "knowingly or recklessly" making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants. *Webb v. United States,* 789 F.3d 647, 659-660 (6th Cir. 2015).  Defendant Oliver's involvement throughout this entire matter has been troubling. Defendant Oliver violated department policy by allowing an eight-year old facial recognition photo to establish her probable cause with absolutely no investigation. Defendant Oliver omitted the fact that Plaintiff's criminal history report stated that Plaintiff's right arm contained a tattoo which was not consistent with the female's subject's right arm. More importantly, Defendant Oliver continued with the malicious prosecution

21

of the Plaintiff when Defendant Oliver was aware that Plaintiff was not the female

subject.

Also, Defendant Oliver submitted an arrest warrant for the female subject

where Defendant Oliver had no evidence that the female subject had even

committed a crime.

**3.    WHETHER SUMMARY JUDGMENT SHOULD BE GRANTED AS TO PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS WHERE PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST AND/OR OFFICER OLIVER CONDUCT WAS NOT EXTREME OR OUTRAGEOUS AND PLAINTIFF CANNOT SHOW INTENT OR RECKLESSNESS.**

"To establish a prima facie claim of intentional infliction of emotional

distress, the plaintiff must present evidence of (1) the defendant's extreme and

outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and

(4) the severe emotional distress of the plaintiff." *Walsh v. Taylor,* 263 Mich.App.

618, 634, 689 N.W.2d 506 (2004). "[O]nly when a plaintiff can demonstrate that

the defendant's conduct is so outrageous in character, and so extreme in degree, as

to go beyond all possible bounds of decency, and to be regarded as atrocious and

utterly intolerable in a civilized community'" will liability attach. *Walsh* at

634 (quoting *Graham v. Ford,* 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999)).

The test to determine whether a person's conduct was extreme and outrageous is

whether recitation of the facts of the case to an average member of the community

"would arouse his resentment against the actor, and lead him to exclaim,

22

"Outrageous!"`" (*Graham, supra* at 674-675, 604 N.W.2d 713, quoting *Roberts v. Auto-Owners Ins. Co.,* 422 Mich. 594, 603, 374 N.W.2d 905 (1985), quoting Restatement Torts, 2d, § 46, comment d, pp. 72-73)). In reviewing claims of intentional or reckless infliction of emotional distress, it is generally the trial court's duty to determine whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Doe v. Mills,* 212 Mich App 73, 91; 536 NW2d 824 (1995). Where reasonable minds may differ, whether a defendant's conduct is so extreme and outrageous as to impose liability is a question for the jury. *Linebaugh v Sheraton Michigan Corp.*, 198 Mich App 335, 342-343; 497 NW2d 585 (1993).

In this present case, Defendant Oliver's conduct would make the average person state that her actions were outrageous.  Defendant Oliver relied on the Victim to identify Plaintiff pursuant to a facial recognition match. The photo that Victim viewed was eight-years old. **Once, Plaintiff's eight-year-old photo was chosen, Defendant Oliver conducted no further investigation.** If a minimal investigation had been conducted, it would have been discovered that Plaintiff was eight months pregnant and could not have committed the crimes of armed robbery and carjacking.

In her motion, Defendant Oliver made the most bizarre statement stating that, "In fact, Plaintiff's arrest was nothing other than ordinary, aside from being

misidentified as the female suspect." Plaintiff is appalled that Defendant Oliver would make this statement. There is nothing ordinary about being arrested while eight months pregnant for a crime you didn't commit.

On February 17, 2023, a day after Plaintiff was released from custody for crimes that she didn't commit, Plaintiff attempted to retrieve her cellphone from Defendant Oliver who refused to release the cellphone alleging that she is still investigating Plaintiff for the crimes (ECF No. 25-1, PageID 789, Recorded Call of Defendant Oliver). Plaintiff was taken to St. John's Hospital by her fiancé because she was suffering from stomach tightness and pain, whole body pains, headaches, and body weakness (ECF No. 4-1, PageID 109-111). While at the hospital, Plaintiff was taken to an examination room for observation (ECF No. 4, PageID 72). Plaintiff was diagnosed with a low heart rate because of dehydration and given two bags of fluid intravenously (ECF No. 4, PageID 72). **Plaintiff also learned that she was having contractions due to stress from that day's events** (ECF No. 4, PageID 72). Plaintiff was discharged from the hospital and instructed to take medication, maintain a healthy diet, stay hydrated, and ensure ample rest to safeguard the well-being of her unborn child, who was impacted by the situation (ECF No. 4, PageID 72). Plaintiff suffered emotional distress.

Reasonable minds may differ as to whether Defendant Oliver's conduct was so extreme and outrageous as to impose liability. Therefore, this matter is a question for the jury.

## CONCLUSION

For the above state reasons, Plaintiff asks this Honorable Court to dismiss Defendant's Motion for Summary Judgment.

Dated: November 26, 2024                    Respectfully Submitted,


                                            /s/Ivan L. Land
                                            Ivan L. Land (P65879)
                                            Law Offices of Ivan L. Land,
                                            P.C. 25900 Greenfield Rd.,
                                            Suite 210 Oak Park, MI 48237
                                            248.968.4545 / (f)
                                            248.968.4540 ill4law@aol.
                                            **Attorney for PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Motion and Brief in Support of Plaintiff's Response To Defendant's Motion for Summary Judgment with the Court Clerk via CM/ECF on November 26, 2024, to serve all parties.

Dated: November 26, 2024                    Respectfully Submitted,


                                            /s/Ivan L. Land
                                            Ivan L. Land (P65879)