## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN – SOUTHEASTERN DIVISION

PORCHA WOODRUFF,                                Hon. Judith E. Levy
    Plaintiff,                           Case No.: 5:23-cv-11886

- vs -

~~CITY OF DETROIT and~~ LASHAUNTIA OLIVER,
    Defendant.

_____/

### BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

    **NOW COMES**, Defendant, LASHAUNTIA OLIVER, by and through her attorney, Gregory B. Paddison, and for her Brief in Support of Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Defendant states as follows:

### COUNTER-STATEMENT OF FACTS

    In the interests of brevity and expediency, Defendant incorporates the factual recitation set forth in the Brief in Support of Defendant's Motion for Summary Judgment, filed on November 5, 2024. ECF No.: 23-1 at Pg. IDs 328-335. Defendant writes separately to address **some** of the factual inaccuracies, misrepresentations, and omissions asserted in Plaintiff's Motion for Partial Summary Judgment. ECF No.: 25.

**Chronological Misrepresentations**: Plaintiff conflates what information Lawrence Walker ("Mr. Walker"), provided to Detroit Police Department ("DPD") personnel and when, for instance, suggesting that on the night of the carjacking, he stated that he'd seen the male suspect earlier that evening at the BP Gas Station ("BP Station"). ECF No.: 25, Pg. ID 756; citing ECF No.: 4-1, Pg. ID 96. However, this information

was not provided until Feb. 2. <u>ECF No.: 4-1, Pg. ID 96</u>.[1] Plaintiff also suggests that from the onset of the investigation LaShauntia Oliver ("Officer Oliver") had a photo of a person matching the male suspect's description from surveillance cameras on Jan. 29. <u>ECF No.: 25, Pg. ID 756</u>. Yet, these images were not produced until **after** Feb. 3rd. <u>See ECF No.: 23-14</u>. Plaintiff next claims that on Jan. 31st, Officer Oliver had received the investigative lead but failed to show the BP attendant Plaintiff's photo during the Feb. 2nd visit. <u>ECF No. 25, Pg. ID 770 (emphasis omitted)</u>.  Plaintiff was not identified as a lead until after Officer Oliver visited the BP Station a second time. <u>ECF Nos.: 23-10, Pg. ID 377; ECF No.: 23-13, Pg. ID 390-91; ECF No.: 23-8, Pg. ID 372-73</u>. Lastly, Plaintiff asserts that Officer Oliver had the information from the Violent Crimes Reduction Initiative Intelligence Work-Up ("Intelligence Work-Up"), that was later omitted from her Warrant Request. <u>ECF No.: 25, Pg. IDs 770, 773-4</u>. However, the Warrant was approved on Feb. 4th (<u>ECF No.: 23-8</u>), two days before the Intelligence Work-Up was created, to assist the Fugitive Apprehension Services Team ("FAST") locate Plaintiff. <u>ECF No.: 25-1, Pg. ID 817</u>.

**Mr. White Appearance & Description**: Plaintiff claims discrepancies in the description of the male suspect and appearance of Mr. White, should have cast doubt in the reliability the identifications. <u>ECF No.: 25, Pg. ID 769</u>.  However, Mr. Walker estimated the suspect's height as 5'9" to 5'10" and Mr. White is 5'10" (<u>see, ECF</u>

---

[1] Unless otherwise stated, all dates noted herein reference calendar year 2023.

Nos.: 4-1, Pg. ID 95 and 23-32, Pg. ID 679). Mr. Walker also identified the male

suspect as a light-skinned black male, with a thin moustache and full beard, matching

the description of Mr. White. *Id*.[2]   In sum, aside from discrepancies in age and

weight, Mr. Walker's accurately described Mr. White's appearance.

**Photo Line-Up**: Plaintiff suggests that DPD policy or best practices was deviated

from because the image of Plaintiff used in the photo line-up was **not** the image

matched by facial recognition and was a mugshot photograph from 2015, rather than

a more recent Secretary of State photo. ECF 25, Pg. ID 760. However, DPD policy

prohibits using an image matched through facial recognition in a photo line-up. At

the time of Plaintiff's arrest, this policy had been suggested as a best practice and a

policy amendment but had not yet been codified. Johnson Report, Exhibit "A" at Pg.

13, fn C.; citing, DPD Manual § 203.11-4.2. To Plaintiff's contention that her more

recent Secretary of State image should have been used in the line-up, note the

"Statewide Network of Agency Photos Acceptable Use Policy" provides, "**[w]hen**

**possible, other photographs [] should be used rather than MDOS [] images**."

ECF 23-11, Pg. ID 379 (**emphasis added**).

**Reliability of the Identifications:** Incorporating the discussion from Defendant's

---

[2] Regarding differences the assailant's hairstyle [short braids] (ECF No.: 23-5) and
Mr. White's (bald), note that Mr. Walker repeatedly stated "maybe" the assailant
had short braids [Plaintiff's Exhibit 3  at 0:04:50], and omitted a description of the
assailant's hair style in his statement an hour later. ECF No.: 23-6, Pg. ID 367.

Summary Judgment Motion (ECF No.: 23-1, Pg. ID 339-41), Defendant adds that the Mr. Walker's omission of the sexual encounter with the female suspect could easily be attributed to shame or embarrassment. ECF No.: 23-25, Pg. ID 480-82.

**Preliminary Exam**: Plaintiff asserts that "at the Probable Cause Conference, the defense attorney inquired as to why the charges are not being dismissed since the Plaintiff was pregnant, and Defendant Oliver was supposed to contact the prosecutor's office to have the charges dismissed. The prosecutor responded by stating that, 'I have no idea what you are talking about.'" ECF No.: 25, Pg. ID 766. Yet, the hearing transcript reveals that advance notice that the charges were being dismissed had been given. ECF No.: 23-31, Pg. ID 648 ("I was informed that it **would be** dismissed at the PCC"). As only the Prosecutor or presiding Judge could dismiss the charges, it follows that this notice came from the Prosecutor. ECF No.: 23-27, Pg. ID 638. See also, ECF Nos.: 23-28 and 23-30.[3]

**Criminal Acts of the Female Suspect:** Plaintiff suggests the "Victim has never alleged that the female subject robbed or carjacked him. The Victim stated that, the female Trinidad was just standing in the street not doing anything to help." ECF No.: 25, Pg. ID 760 (emphasis, citation, and quotations omitted). This ignores that being an accomplice, accessory, and/or co-conspirator in a criminal act is a crime itself. Here, the female suspect's involvement in the carjacking is supported in that she:

---

[3] If this is disputed, MRPC 3.7 (Attorney as Witness) may be implicated.

i)   Interacted cordially with the male assailant at the BP Station shortly before the crime occurred [ECF No.: 25, Pg. ID 756 (citation omitted)];

ii)  Had Mr. Walker drive her to the location of the crime (ECF Nos.: 23-5; 23-6; and 23-13);

iii) May have drugged Mr. Walker (ECF Nos.: 23-6 and 23-8); and

iv)  The first thing the male assailant demanded, was Mr. Walker's gun, and Mr. Walker had previously told the female accomplice that "he has a gun, but did not mention [] he did not have a gun on him…" ECF No.: 23-5, Pg. ID 363.

**Search Warrant:** Plaintiff has not asserted an unlawful search and/or seizure claim. ECF No.: 4. Regardless, after her arrest Plaintiff's phone was confiscated and delivered to Officer Oliver's desk to be placed in evidence. ECF Nos.: 23-24 and 23-25, Pg. ID 521. The day after her arrest, she contacted Officer Oliver to inquire about having the phone returned. As Officer Oliver explained, she had been instructed to prepare a search warrant for Plaintiff's phone, to locate additional exculpatory evidence in case the prosecutor declined to dismiss the charges. ECF No.: 23-25, Pg. ID 565-570.[4] After speaking to Plaintiff, Officer Oliver spoke with her superiors and, convinced them to allow Plaintiff to retrieve her cell phone that day. ECF No.: 25-1, Pg. ID 824.[5]  Finally, while Officer Oliver concedes that she

---

[4] See also, Plaintiff's Exhibit 14 (Recorded Conversation with LaShauntia Oliver), at 0:01:15, "just to show on this date you were not, nowhere near the scene."

[5] To further exculpate Plaintiff, when Plaintiff retrieved her phone, Officer Oliver photographed Plaintiff to show how visibly pregnant she was, had the Prosecutor refused to dismiss the charges. ECF No.: 25, Pg. ID 765; ECF No.: 25-1, Pg. ID 826.

effectively "cut and pasted" information into the search warrant before submitting, Officer Oliver never had the phone searched." <u>ECF No.: 23-25, Pg. ID 569</u>.

**<u>Physical Injuries</u>**: As a result of her time at the DDC, Plaintiff claims she was diagnosed with dehydration and a low heart rate. <u>ECF No.: 25, Pg. ID 764</u>.  However, the DDC is not under the control of DPD and no 8th Amendment Claims have been asserted. Lastly, Plaintiff states that the well-being of her unborn child was impacted by this event. <u>*Id*</u>.  Plaintiff has produced **no** evidentiary support for this claim.

<u>STANDARD OF REVIEW</u>

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. <u>Fed. R. Civ. Proc. 56(a)</u>.  The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. <u>*Sagan v United States*, 342 F.3d 493, 497 (6th Cir. 2003)</u>.  Where the movant carries its burden of showing the evidence in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, summary judgment is appropriate. <u>*Guiterrez v Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987)</u>.  The court does not weigh the evidence to determine the truth of the matter, but to determine if the evidence produced creates a genuine issue for trial. <u>*Sagan*, supra</u>.  The moving party discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case. <u>*Horton v Potter*, 369 F.3d 906, 909 (6th Cir. 2004)</u>.  The

burden then shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts," [*Matasushita Electric v Zenith Radio*, 475 US 574, 586 (1986)] it must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, supra at 909.  A factual dispute alone does not defeat a properly supported motion for summary judgment; the disputed fact must be material. *Anderson v Liberty Lobby*, 477 US 242, 252 (1986). A fact is "material" when proof of that fact would establish or refute as essential element of a claim or a defense. *Kendell v Hoover*, 751 F.2d 171, 174 (6th Cir. 1984).

### ISSUES PRESENTED

1) **WHETHER PLAINTIFF'S FEDERAL AND STATE RIGHTS TO BE FREE FROM FALSE ARREST AND FALSE IMPRISONMENT WERE VIOLATED WHERE OFFICER LASHAUNTIA OLIVER LACKED PROBABLE CAUSE TO REQUEST AN ARREST WARRANT FOR PLAINTIFF'S ARREST?**

2) **WHETHER PLAINTIFF'S FEDERAL AND STATE RIGHTS TO BE FREE FROM MALICIOUS PROSECUTION WERE VIOLATED WHERE OFFICER LASHAUNTIA OLIVER LACKED PROBABLE CAUSE TO REQUEST AN ARREST WARRANT FOR PLAINTIFF'S ARREST?**

To resolve both issues, a nearly identical legal analysis is in order and accordingly, they will be addressed together.

### APPLICABLE LAW & ARGUMENT

Again, in the interests of brevity and expediency, Defendant hereby incorporates the legal arguments set forth in the Brief in Support of Defendant's Motion for Summary Judgment, filed on November 5, 2024. ECF No.: 23-1 at Pg. IDs 336-345. Defendant writes separately only to address and discuss the cases cited and arguments raised in Plaintiff's Motion for Partial Summary Judgment.

7

**A. Elements of Claims:** To prevail on claims of False Arrest/Imprisonment under State or Federal Law, "a plaintiff must show that the arrest was not legal, *i.e.*, that the arrest was not based on probable cause." *Peterson Novelties v. Berkley*, 259 MichApp 1, 18 (2003); *Voyticky v. Timberlake,* 412 F3d 669, 677 (6th Cir 2005).

To establish a malicious prosecution claim under Federal Law, Plaintiff must prove that a criminal prosecution was initiated against her and the Officer Oliver made, influenced, or participated in the decision to prosecute; there was no probable cause for the criminal prosecution; as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and the criminal proceeding was resolved in the plaintiff's favor." *Johnson v. Moseley*, 790 F3d 649, 654 (6th Cir 2015). Under Michigan Law, Plaintiff has "the difficult burden of proving four elements: that the defendant has initiated a criminal prosecution against [her]; the criminal proceedings terminated in [her] favor; that the person who instituted or maintained the prosecution lacked probable cause for [their actions; and that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Peterson Novelties,* supra at 21.

**B. Duty to Investigate & Probable Cause:** As Plaintiff notes, "[i]n cases involving search warrants, and in cases involving arrest warrants sought **prior** to an arrest, the law is clear than an officer may be held liable under 42 USC § 1983 for an illegal search or seizure when the officer 'knowingly and deliberately, or with a reckless

8

disregard for the truth' makes 'false state statements or omissions that create a falsehood' and 'such statements or omissions are material, or necessary, to the finding of probable cause." <u>ECF No.: 35, Pg. ID 772</u>; citing, *Peet v. City of Detroit*, <u>502 F.3d 557, 570 (6th Cir. 2007) [parallel quotation omitted]</u>. This is because, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) [citation omitted].

The **only** other exception to the rule immunizing officers from liability following an arrest pursuant a warrant is found in those **extreme** situations where a wholly unreasonable warrant request by an officer is met by the "greater incompetence of [a] magistrate." *Malley v. Briggs*, 475 US 335, 345-346, [hn4] (1986).[6] In order for this exception to apply here, not only must the competence of Officer Oliver be condemned, but also that of Officer Oliver's supervisor who approved the Warrant Request (<u>ECF No.: 23-9, Pg. ID 374</u>); two Prosecuting Attorney's (<u>ECF No.: 23-21, Pg. ID 418-20</u>); and a Magistrate Judge. *Id.* As Plaintiff does not allege or argue

---

[6] "Where a magistrate acts mistakenly in issuing an arrest warrant but within range of professional competence of a magistrate, police officer who requested the warrant cannot be held liable under section 1983; however, if no police officer of reasonable competence would have requested the warrant, *i.e.*, his request is outside range of professional competence expected of a police officer, and magistrate issues warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty; officer then cannot excuse his own default by pointing to greater incompetence of [a] magistrate." *Id.*

that the present matter is one such rare and extreme instances, it is puzzling that with very few exceptions, the cases cited by Plaintiff pertaining to eye-witness identifications serving as the basis for probable cause and in critique of Officer Oliver's investigation, all deal with arrests made without the issuance of a warrant, rather than pursuant to a warrant wrongfully obtained. ECF No.: 25, Pg. ID 768-771.

For instance, in *Kuehl v. Burtis*, cited as "rejecting officer's qualified immunity defense where the officer ignored exculpatory evidence which would have negated a finding of probable cause" (ECF No.: 25, Pg. ID 765), a Sioux Falls police officer was dispatched to a retail store following a fight between a store owner and a patron, ultimately arresting the store owner on assault charges that were later being dropped. In denying the Officer qualified immunity, the Court noted that the Defendant:

> Ignored plainly exculpatory evidence [including] the sizeable bruise over [the store owner's] left eye. [The Officer] also knew that [the store owner] had asked [the patron] to leave the store, and was told that [the patron] hit [the store owner] with considerable force. He also ignored [a store employee's] efforts to retract her statement that [the store owner] had slapped [the patron], and his report made no mention of this retraction. Evidence known to [the Officer] therefore suggested that [the store owner] neither attempted to cause bodily injury nor 'intentionally caused bodily injury.
>
> Second, [the Officer] refused to interview [a second employee] despite [them] having witnessed the entire altercation... [and whose] account would have further exonerated [the store owner] and negated probable cause... *Kuehl*, 173 F.3d 646, 651 (1999).

The *Kuehl* Court rested its finding on the premise that, "[a]n officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if

10

substantial inculpatory evidence (standing by itself) suggests that probable cause exists." _Id_. at 650. "For example, an officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime [], but the officer may not arrest the suspect if, in addition, the officer is aware of DNA evidence and a videotaped account of the crime that conclusively establish the suspect's innocence." _Id_. (internal citations omitted).[7]

In the present matter, while there was certainly an opportunity to conduct further investigation prior to submitting the Warrant Request that may have uncovered exculpatory information, unlike in _Kuehl_, there is no allegation let alone evidence that Officer Oliver was aware of, but disregarded, exculpatory evidence when she submitted the Warrant Request. This distinction Plaintiff appears to ignore. _Kuehl's_ holding is not in conflict with the established principle that an officer "is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest" and that "once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." _Ahlers v. Schebil_, 188 F.3d 365, 370-71 (6th Cir. 1999) [citations

---

[7] Citing, _Baptiste v. J.C. Penney Co.,_ 147 F.3d 1252, 1257 (10th Cir.1998) [no probable cause to arrest plaintiff for shoplifting despite security guards' informing police that plaintiff stole merchandise, where officers viewed videotape rebutting guards' account and where plaintiff explained her actions to officers and produced receipts for the merchandise in question].

omitted]. Instead, *Kuehl* merely stands for the proposition than an officer is not free to simply disregard plainly exculpatory evidence, particularly in the context of a warrantless arrest. This concept is echoed in the remaining cases referenced in this portion of Plaintiff's argument, all addressing warrantless arrests.[8]

Before discussing *Ahlers*, the only case referenced by Plaintiff addressing an arrest was made pursuant to a warrant, a moment must be taken to address a block quote found on Page 16 of Plaintiff's Brief (ECF No.: 25, Pg. ID 771), in which Plaintiff espouses *Ouza v. City of Dearborn Heights*, another warrantless arrest case, for the proposition that,

> An allegation by one individual that another person committed a crime without further corroboration is insufficient to establish probable cause to arrest that person. At most, it gives an officer reasonable suspicion of criminal activity such that the officer would be justified in investigating further..." *Ouza*, 969 F.3d 265, 282 (6th Cir. 2020).[9]

When context is provided however, the holding in *Ouza* evolves from an apparent outright prohibition. In its entirety, this excerpt reads as follows:

> In a series of cases, we have refined the governing standard for when an eyewitness' allegations are sufficient to establish probable cause.

[8] *Sevigny v. Dicksey*, 846 F.2d 953, 957–59 (4th Cir.1988); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986) [ECF No.: 25, Pg. ID 768] and *Weser v. Goodson*, 965 F.3d 507 (6th Cir. 2020) [ECF No.: 25, Pg. ID 771]. *Wesser* did not, as Plaintiff suggests, quote *Kuehl* as authority, but as merely referencing the argument being made by the Appellant in that matter. "But Weser quotes *Kuehl*... for the proposition that probable cause does not exist when a minimal further investigation would have exonerated the suspect." *Weser*, at 514.
[9] The cited portion of *Ouza* references but does not quote *Gardenshire v. Schubert*, 205 F.3d 303, 317 (6th Cir. 2001).

12

Beginning with *Ahlers* [], **we explained that an eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation**…

Stated in positive terms, *Ahlers* established that a person has a right to be free from arrest based solely on an eyewitness account **that is in some way untruthful or unreliable**. Similarly in *Gardenhire*, we held that an allegation by one individual that another person committed a crime without further corroboration is insufficient to establish probable cause to arrest that person. At most, it gives an officer reasonable suspicion of criminal activity such that the officer would be justified in investigating further pursuant to *Terry v. Ohio*. But the witness' allegation standing alone does not give an officer probable cause to arrest the suspect. These cases and their progeny clearly establish that **Plaintiff had a right to be free from arrest based solely on Mohamad's unreliable and uncorroborated accusation. This is especially true where Mohamad's account was the only piece of evidence from which Officer Dottor could even conceivably (although unreasonably) have concluded that he had probable cause to arrest Plaintiff**. *Ouza*, supra at 282 (**emphasis added**).

Turning to *Ahlers*, the only case relied upon by Plaintiff addressing an arrest made pursuant to an arrest warrant, it is important to first highlighted a key distinction addressed in that opinion, between the circumstances the Court was faced with (and that exist here), and those considered in *Kuehl*, *Sevigny*, *BeVier*, *Weser*, *Ouza*, and *Gardenshire*.   In each of these later cases, the Court considered a warrantless arrest that was effectuated by an officer who "disregard[ed] plainly exculpatory evidence." Conversely, in *Ahlers*, and the present matter, the crux of Plaintiff's argument is not that Officer Oliver disregarded evidence, but rather, the

Plaintiff was seeking to establish liability "for evidence which they failed to collect and, therefore, of which they were unaware." *Ahlers*, at 372. The *Ahlers* Court analogized the matter before it to *Crisp v. City of Kenton*, explaining:

> The **Plaintiff [] argued that the officers did not have probable cause to arrest him because there was information which, if the officers had considered it, would have established that there was no probable cause to suspect Crisp of criminal activity. The panel, however, rejected Crisp's argument, reasoning that on the basis of the information the officers actually had, as opposed to information they could have had if they had looked at Crisp's identification and believed his story**, the officers certainly had sufficient information with which to establish probable cause. ***Ahlers*, supra [discussing *Crisp*, 1998 WL 180561 at \*4 (6th Cir.1998] (emphasis added).**

This is identical to the argument proffered by Plaintiff in this instance.

> If Defendant Oliver had taken a fifteen-minute drive to Plaintiff's home, and knocked on Plaintiff's door, Defendant Oliver would have learned that Plaintiff was eight months pregnant, and that Plaintiff could not have been the female subject that was with the Victim prior to robbery and carjacking. ECF No.: 25, Pg. ID 771.

However, in this case Plaintiff has identified **nothing** to suggest that Officer Oliver was aware of, but ignored or disregarded, exculpatory evidence. As such, Officer Oliver had no obligation to conduct any further investigation, provided the identification of Plaintiff as the female suspect was sufficient to establish probable cause. Again, police officers are "entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest, unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness

was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers*, at 370.

**C. Reliability of Witness Identification & Probable Cause:** Having established that *if* Mr. Walker's identification of Plaintiff was sufficiently reliable to establish probable cause for the warrant for Plaintiff's arrest to issue, Officer Oliver had no duty to undertake any further investigation, we now turn to a discussion regarding the reliability of Mr. Walker's identification. Whether an eyewitness identification was reasonably reliable is a legal question. *Penn v. Bergtold*, 803 F. App'x 900, 904 (6th Cir. 2020); citing, *Smith v. Perini*, 723 F.2d 478, 481 (6th Cir. 1983).

The seminal case providing guidance relating to the reliability of a victim identification is *Neil v. Biggers*. There, the Supreme Court stated that the factors to consider when evaluating the likelihood of misidentification are: i) the opportunity of the witness to view the criminal at the time of the crime; ii) the witness's degree of attention; iii) the accuracy of the witness's prior description of the criminal; iv) the level of certainty demonstrated by the witness at the [identification]; v) the length of time between the crime and the [identification]. *Biggers,* 409 US 188, 199-200 (1972). Limiting this inquiry to the identification of Plaintiff, we consider these factors in turn.

First, Mr. Walker stated that he'd spent "multiple hours" with the female suspect, who he identified as Plaintiff, immediately prior to the carjacking. ECF No.: 23-18,

Pg. ID 412. Clearly this factor ways in favor of a reliable identification. <u>See, *United</u>
<u>States v. Hill*, 967 F.2d 226, 232–33 (6th Cir. 1992) [finding "a couple of minutes" a</u>
<u>sufficient opportunity to view the suspect].</u>[10]

Second, to analyze the sufficiency of an eyewitness's degree of attention, the
Court must examine the circumstances surrounding the witness's encounter [*Howard*
*v. Bouchard*, 405 F.3d 459, 472–73 (6th Cir. 2005)], noting that **more reliability is**
**found where a witness was able to view the assailant with a heightened degree**
**of attention, as compared with disinterested bystanders or casual observers**.
<u>*United States v. Crozier,* 259 F.3d 503, 511 (6th Cir. 2001)</u> [**emphasis added**]
<u>(quotation omitted)</u>. In this instance, although Mr. Walker admitted to drinking and
suspected that he may have been drugged in the time preceding the robbery, it is
undisputed that aside from their detours to purchase alcohol and stop at the BP
Station, Mr. Walker and the female suspect spent "multiple hours" together,
including while they engaged in sexual intercourse, alone in Mr. Walker's vehicle.
Again, this factor weighs in favor of a reliable identification.

Turning to the third factor, the accuracy of the witness's prior description of the
criminal, Mr. Walker initially described the female suspect as "a black female,
brown complexion, brown and blond[e] long hair, slim build, about 5'4" in height,

---

[10] Given the time Mr. Walker spent with the female versus male suspects and the
circumstancest, it logically follows that Mr. Walker's physical description of the
female suspect would be more accurate than that of the male suspect.

wearing a black jacket." ECF No.: 25-5, Pg. ID 363. Describing precisely, the woman Officer Oliver observed on surveillance video at the BP Station. ECF No.: 23-32, Pg. IDs 695-96, 699-701. And again, Officer Oliver viewed the surveillance video from Jan. 30th (*Id*. at Pg. ID 695-96, 699-700), **before** Mr. Walker identified Plaintiff on Feb. 3rd, only viewing the video from Jan. 29th (*Id*. at Pg. ID 701) after the identification. Considerations also weighing in favor of a reliable identification.

Fourth, the level of certainty demonstrated by the witness, also weighs in favor of a reliable identification. While it was previously stated that Mr. Walker identified both suspects in the line-ups in five minutes combined, more specifically, Mr. Walker identified Plaintiff as the female suspect **within one minute**, during a sequential line-up, while taking four minutes to select Mr. White. ECF 23-18, Pg. ID 411-12); *Grayer v. McKee*, 149 F. App'x 435, 440 (6th Cir. 2005) [identification "without hesitating" favors reliability of witness identification].

Finally, the fifth factor, the length of time between the crime and the identification. In this matter, the carjacking occurred on the evening of Jan. 29th, while Mr. Walker identified Plaintiff and Mr. White as the suspects in a photo line-up on the afternoon of Feb. 3rd. In other words, a very short period, less than five days had passed between the time of crime and the identification. Courts have routinely held that **significantly** longer times between the criminal act and the identification are not cause to doubt the reliability of the identification. See *e.g.*,

_Howard v. Bouchard,_ 405 F.3d 459, 473-74 (6th Cir.2005) [observing that "three months is not a great length of time between an observation and identification"].

In sum, **every** _Biggers_ factor suggests that Mr. Walker's identification of Plaintiff, although later proven to be inaccurate, was reliable. What's more, consistent with _Ahlers_, there neither was, nor is, any basis to believe that Mr. Walker to intentionally misrepresented or mislead law enforcement when he identified Mr. White and Plaintiff. The approach of the Seventh and Ninth Circuits to probable cause determinations has been adopted in this Circuit. _United States v. Amerson_, 38 F.3d 1217 (6th Cir. 1994). In those circuits, courts have held that "when the informant is the victim of the crime it need not be shown by other facts, that she is a reliable informant" [_Id._; citing, _United States v. Mahler,_ 442 F.2d 1172, 1174–75 (9th Cir.)] and "when an officer has received his information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause." _Id._, citing, _Gerald M. v. Conneely,_ 858 F.2d 378, 381 (7th Cir.1988) [parallel citations and quotations omitted].

For these reasons, probable cause existed and the warrant for Plaintiff's arrest was properly issued, despite the fact that Plaintiff was ultimately shown to have been misidentified. Summary Judgment in favor of Officer Oliver is therefore appropriate.

**D. <u>Warrant Request Omissions and Assertions</u>:** However, _even if_ Officer Oliver, her supervisor, two Wayne County Prosecutor's, and a Magistrate Judge were wrong

in finding that probable cause existed based on the witness identification and the arrest warrant was improperly issued, Officer Oliver is still entitled to Summary Judgment on qualified immunity grounds.

In order to overcome Officer Oliver's entitlement to qualified immunity, Plaintiff must demonstrate that Officer Oliver "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood" and "such statements or omissions were material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F3d 294, 305 (6th Cir 2010) [citation omitted].[11] Turning first to the "omissions" from the Warrant Request that Plaintiff attributes to Officer Oliver. ECF No.: 25, Pg. ID 773-74.

Plaintiff first argues that Officer Oliver did not disclose in the Warrant Request that the image of Plaintiff that was included in the line-up was a mugshot photograph from 2015. *Id.* at Pg. ID 773. As previously addressed, however, it was Deputy Donald Greenwald ("Dep. Greenwald") who prepared the line-up containing Plaintiff's image, while Officer Oliver prepared the line-up for Mr. White.  ECF No.: 23-1, Pg. ID 332 (citations omitted).  As such, Officer Oliver was unaware of when the image of Plaintiff included in the line-up was taken. See, ECF 23-17.

_____

[11] See also, *Smith v. Tolan,* 158 Mich 89, 93 (1909) ["in actions for malicious prosecution (), where a prosecuting witness has in good faith fully and fairly stated all of the material facts within his knowledge to the prosecuting officer and acted upon his advice, proof of the fact establishes a case of probable cause"].

In the next paragraph Plaintiff notes that during his interrogation, Mr. White stated that he was social media acquaintances with the female suspect whom he knew as Trinity and had her phone number stored in his cell phone. ECF No.: 25, Pg. ID 773. However, Mr. White's interrogation was performed by Officers, Ned Gray and Quentin Glover, as Officer Oliver and Dep. Greenwald were conducting the photo line-ups with Mr. Walker [ECF 23-19; Plaintiff's Exhibit "8" (White Interrogation Video)], Officer Oliver did state in her Warrant Request that "**Defendant White stated he knows the female who goes by the name of Trinidad and denied carjacking Mr. Walker**" [ECF No.: 23-8, Pg. ID 374 [**emphasis added**] (internal quotations omitted)], and a recording of Mr. White's interrogation was provided to the Prosecutor's Office with the Warrant Request. ECF No.: 23-19, Pg. ID 415.[12]

Also in this second bulleted paragraph, Plaintiff mistakenly claims that Officer Oliver possessed the information noted in the "Violent Crimes Reduction Initiative Intelligence Work-Up" ["Intelligence Work-Up"] (ECF No.: 25, Pg. IDs 770, 773-4; referencing ECF No.: 25-1, Pg. ID 807-818), which was not referenced in her Warrant Request. ECF No.: 25, Pg. IDs 773-774. The problem with this assertion lies in that the Warrant Request was submitted on Feb. 4th (ECF No.: 23-8), but the Intelligence Work-Up was not created until Feb. 6th, to assist the Fugitive

---

[12] This document was included in the subpoena response from the Wayne County Prosecutors Office (Bates ID A000055). The version filed as ECF No.: 23-19, was taken from Officer Oliver's Investigative file and therefore lacks a Bates ID.

Apprehension Services Team ("FAST") in identifying Plaintiff's potential whereabouts. ECF No.: 25-1, Pg. ID 817.

Turning to the next paragraph, asserting that the BP attendant, Salma Bensouda, knew the female suspect and that Officer Oliver did not reference this in her Warrant Request. ECF No.: 25, Pg. ID 774. While Plaintiff asks this Court to accept this speculative claim, it should be noted that during her investigation, Officer Oliver was informed by the attendant that she recognized the female suspect, but did not know her name. ECF No. 23-25, Pg. ID 486-487.

The last three bulleted paragraphs contain asserted omissions are not supported or directly contradicted by the record, wholly without merit, and should be disregarded. ECF No.: 25, Pg. ID 774.  First, as noted above, Officer Oliver did not have the information contained in the Intelligence Work-Up pertaining to Plaintiff's business or social media presence, because that document was not created until two days after the Warrant Request had been approved.[13] ECF No.: 25-1, Pg. ID 817; [fn 25].  Second, contrary to representations otherwise, Plaintiff's vehicle had not been "monitored" by DPD. ECF No.: 25, Pg. ID 762, 774. Rather in preparing the Intelligence Work-Up for the FAST Team, Plaintiff's license plate was searched, with the positive results were included in the Intelligence Work-Up to provide insight on Plaintiff's possible whereabouts, in the event she was not located at her

---

[13] Nor does it negate that a suspect may have multiple social media identities.

home address. <u>ECF No.: 25-1, Pg. ID 810</u>. Furthermore, even had Officer Oliver possessed this information, there are no readings of Plaintiff's license plate on Jan. 29, the date of the carjacking and robbery. And third, **it is undisputed fact** that Officer Oliver had no knowledge of Plaintiff's pregnancy until she saw her at the Detroit Detention Center on Feb. 16th. To suggest that this was an "omission" from a Warrant Request submitted on Feb. 4th, borders on disingenuous. <u>ECF No.: 25, Pg. ID 774</u>.

In sum, most of Plaintiff's alleged omissions from the Warrant Request, are not omissions at all, but are arguments pertaining to what Officer Oliver *could* or *should* have done, and what information she *could* or *should* have uncovered prior to submitting the Warrant Request. This argument has already been dispelled in the prior discussion of *Ahlers* and *Crisp*, directing the Court to consider the information the Officer possessed, rather than what potentially exculpatory information might be uncovered through additional investigation.

Briefly, the allegedly improper "assertions" in the Warrant Request amount to nothing more than identification of the female suspect as "Defendant Woodruff," therein. <u>ECF No.: 25, Pg. ID 775 (citations omitted)</u>. Plaintiff appears to ignore that this monicker is the result of her identification as the female accomplice (<u>ECF No.: 23-17 and 23-18</u>) and **because she was being named as one of the Defendants for**

**whom the Warrant was sought**. <u>ECF 4-1; Pg. ID 85</u>. Hence, the **only** reason any

of the assertions are false is because Plaintiff was misidentified by Mr. Walker.

E. **<u>Unsupported Assertions and Qualified Immunity</u>:**  Although Plaintiff makes

conclusory remarks regarding the "omissions" from and "assertions" to the Warrant

Request, including:

- [A]ny reasonable officer would have known that this was the kind of information that the judge would wish to know (<u>ECF No.: 25, Pg. ID 773</u>);

- If any of these omissions were inserted into the Request for Warrant, probable cause would have been lacking (<u>*Id*. at Pg. ID 774</u>); and

- These [assertions] were false and misleading. Any individual reading these statements would have believed that the female subject was Plaintiff, Porcha Woodruff. Therefore, if these false statements were removed from the arrest warrant, probable cause could not have been established (<u>*Id*. at Pg. ID 776</u>);

Plaintiff cites no authority, nor provides any discussion, in support of these claims.

Plaintiff does not explain *how* the omissions or assertions were material to the

finding of probable cause, nor argues that probable cause would not have otherwise

existed. "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort

at developed argumentation, are deemed waived. It is not sufficient for a party to

mention a possible argument in the most skeletal way, leaving the court to ... put

flesh on its bones." <u>*McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)</u>

<u>[citation omitted]</u>.

 Moreover, Plaintiff cites no authority for the proposition that the allegedly

improper omissions or assertions in the Warrant Request, such as failing to include

the date on which the mugshot used in a photo line-up was taken constituted a violation of a clearly established right, required to overcome qualified immunity.

> The standard sets a high bar because it requires a plaintiff to identify with a high 'degree of specificity the legal rule that a government official allegedly violated. The rule must be particularized to the facts of the case. Given this requirement, the Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality. Such an abstract framing avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.
>
> The Supreme Court has also told us how to decide if a plaintiff has identified a sufficiently specific legal rule: The plaintiff has identified a rule at too high a level of generality if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the identified rule was firmly established. _Beck v. Hamblen Cnty., Tennessee_, 969 F.3d 592, 599 (6th Cir. 2020) [citations and quotations omitted].

Qualified Immunity applies if "a reasonable officer could have believed" that his or her actions were lawful "in light of clearly established law and the information the [officer] possessed." _Anderson v. Creighton_, 483 US 635, 641 (1987). A reasonable belief could be a mistaken belief, and the fact that it turns out to be mistaken does not undermine its reasonableness as considered at the time of the act. _Davenport v. Causey_, 521 F3d 544, 552 (6th Cir 2008) [citation omitted]. In other words, immunity applies unless it is obvious that no reasonably competent official would conclude the actions were unlawful. _Chappell v. Cleveland_, 585 F3d 901, 907 (6th Cir 2009).  In this instance, Plaintiff has failed to satisfy any of the burdens required to survive Summary Judgment, let alone be awarded Summary Judgment.

24

- Plaintiff has failed to demonstrate that it was objectively unreasonable for Officer Oliver to believe that probable cause for Plaintiff's arrest existed. *Anderson v. Creighton*, 483 US 635, 641 (1987).

- Plaintiff has failed to demonstrate that Officer Oliver "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood" or that "such statements or omissions were material, or necessary, to the finding of probable cause." *Sykes*, supra. See also, *Weiden v. Weiden*, 246 Mich 347, 354 (1929).

- Finally, Plaintiff has failed to support her claim that Officer Oliver violated clearly established law by failing to point to "controlling authority or a robust consensus of cases of persuasive authority … clear enough that … every reasonable official would know. *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

## CONCLUSION

For the reasons stated herein, and those incorporated by reference from the Brief in Support of Defendant's Motion for Summary Judgment (ECF No.: 23-1), Defendant, LASHAUNTIA OLIVER, respectfully requests that this Honorable Court deny Plaintiff's Motion for Partial Summary Judgment and further grant any other relief deemed just and appropriate.

Respectfully Submitted,
CITY OF DETROIT LAW DEPARTMENT

Dated: November 27, 2024          /s/   Gregory B. Paddison
                                        Gregory B. Paddison (P75963)
                                        Attorney for Defendant