UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHEASTERN DIVISION

PORCHA WOODRUFF,                                         Hon. Judith E. Levy
    Plaintiff,                                         Case No.: 5:23-cv-11886

- vs -

CITY OF DETROIT and LASHAUNTIA OLIVER,
    Defendants.
_____/

## DEFENDANTS' REPLY BRIEF

**Incorporation**: In the interests of brevity and expediency, Defendant incorporates the factual recitations and legal arguments set forth, not only in Defendant's Motion for Summary Judgment (ECF No.: 23-1, Pg. ID 328-350), but also those stated in Defendant's Response to Plaintiff's Motion for Partial Summary Judgment (ECF No.: 30-1, Pg. ID 888-912), as if restated in full herein. Defendant writes separately to address novel factual assertions and to highlight key legal concepts.

**Criminal Acts of the Female Suspect**: As previously addressed, the criminal conduct of the female accomplice was not premised upon her direct involvement in the carjacking and robbery itself, but rather the actions that made the carjacking possible. ECF No.: 30-1, Pg. ID 891-92. A concept Plaintiff continues to ignore. ECF No.: 29, Pg. ID 856, 864-66. In addition to the factors suggesting the female accomplice's involvement in the underlying crimes, Defendant notes that the female accomplice also returned Mr. Walker's phone, which was left in his vehicle when

1

he was carjacked (ECF No.: 23-5, Pg. ID 363), to the BP Station. For this to be possible, it requires that the female accomplice interacted with the male suspect both before **and after** the carjacking occurred. So, Plaintiff's assertion that the suspected criminality of the female accomplice was in any way based on her mere proximity to the carjacking, is entirely without merit. See, ECF No.: 29, Pg. ID 864-66.

Finally, nothing in Plaintiff's Exhibit 2 (ECF No.: 29-1, Pg. ID 882) undermines Mr. Walker's claim that he suspected he may have been drugged, a claim by Officer Oliver's observations of Mr. Walker's behavior from the surveillance video recorded on Jan. 29th. See, ECF No.: 23-8, Pg. ID 372-73.[1]

**Plaintiff's Phone**: Plaintiff asserts that when Plaintiff was released from the DDC on Feb. 16th, Officer "Oliver had possession of her cellphone despite knowing that Plaintiff had no involvement in the robbery or carjacking. ECF No.: 29, Pg. ID 857. To clarify, after her arrest Plaintiff's phone was confiscated and delivered to Officer Oliver's desk to be placed in evidence. ECF Nos.: 23-24 and 23-25, Pg. ID 521. That day, after Officer Oliver completed her firearms training, she retrieved her file and drove to the DDC to interview Plaintiff. ECF No.: 23-25, Pg. ID 556-57. Upon realizing Plaintiff was not the female suspect, Officer Oliver returned to her station and began working to secure Plaintiff's release.

---

[1] Although, it would seem that if Mr. Walker was not drugged, this would bolster the reliability of his identification of Plaintiff as the female accomplice.

2

The next day, Plaintiff contacted Officer Oliver to inquire about having the phone returned, to which Officer Oliver explained that she'd been instructed to prepare a search warrant for Plaintiff's phone, to locate additional exculpatory evidence. "I believe the woman in the video was not who we have in custody, Woodruff. **However, to confirm I will prepare a CDR warrant for Woodruff's phone per Captain O'Rourke**." ECF No.: 23-27, Pg. ID 628 (**emphasis added**).[2] After speaking to Plaintiff, Officer Oliver spoke with her superiors and convinced them to allow Plaintiff to retrieve her cell phone after being in Officer Oliver's "possession" for less than one day. ECF No.: 25-1, Pg. ID 824; ECF 23-25, Pg. ID 567; ECF No.: 25-1, Pg. ID 824. Again, while Officer Oliver concedes that she effectively "cut and pasted" information into the search warrant before submitting, the phone was not searched (ECF No.: 23-25, Pg. ID 569), and there is no claim asserted in this matter relating to the search and/or seizure of Plaintiff's phone.

**Plaintiff's Tattoo**: Plaintiff asserts that one of Officer Oliver's 'omissions' from the Request for Warrant was that she'd "obtained Plaintiff's criminal history record which indicated that Plaintiff had a tattoo on her right arm [and that the female suspect] didn't have a tattoo." ECF No.: 29, Pg. ID 863.

This assertion is problematic in several respects. First, the criminal history record

---

[2] See also, ECF No.: 23-25, Pg. ID 565-570; and Plaintiff's Exhibit 14 (Recorded Conversation with LaShauntia Oliver), at 0:01:15, "**just to show on this date you were not, nowhere near the scene**."

3

indicates simply "TAT UR ARM" meaning "tattoo upper right arm." ECF No.: 29-1, Pg. ID 880. It does not indicate the size of the tattoo, nor *where* on the upper right arm the tattoo was located; *i.e.*, or whether the tattoo was far enough up the right arm, or on the underside of the upper right arm, so as to be covered by a t-shirt. See, ECF No.: 23-32, Pg. ID 701. Nor does this preclude that the possibility that a tattoo may have been removed.

**Preliminary Examination**: Undersigned counsel must concede to having misread the 36th District Court Register of Actions (ECF No.: 23-29) in that the hearing that occurred on Feb. 27th was merely the Probable Cause Conference, and that the Preliminary Examination was scheduled and held on Mar. 07th, where it was then voluntarily dismissed. Although in fairness, Plaintiff's counsel did not object to proceeding past the Probable Cause Conference, which was held via Zoom, to the Preliminary Examination [ECF No.: 23-31, Pg. ID 647-8 ("You don't have any information, okay. Let's schedule it for the exam then")].

Also notable is that Officer Oliver contacted Assistant Prosecuting Attorney, Garrett Garcia, on Feb. 17th, who had initially approved the arrest warrant (ECF No.: 23-21, Pg. ID 418), to explain that Plaintiff had been wrongfully identified by Mr. Walker. ECF No.: 23-30, Pg. ID 644. A different Assistant Prosecuting Attorney, Alexander Kerker, attended both the probable cause conference and preliminary examination. ECF Nos.: 23-31, Pg. ID 645; and 23-29, Pg. ID 643. As such,

Plaintiff's assertion that "[a]t the probable cause conference, Plaintiff asked to have her scheduled preliminary examination **when she learned that Detective Oliver failed to contact the prosecution regarding the fact that she was not the female suspect**" both untrue, and directly contradicted by the record evidence. ECF No.: 29, Pg. ID 871 (**emphasis added**).

**Department Policy:** Plaintiff asserts that Officer Oliver "violated department policy by allowing an eight-year old facial recognition photo to establish her probable cause with absolutely no investigation." ECF No.: 29, Pg. ID 872. This claim is both unsupported by reference to any policy provisions but is also factually false. See, ECF No.: 30-1, Pg. ID 890.

**Continuation of Prosecution:** With citation or supporting argument, Plaintiff also asserts that "Defendant Oliver continued with the malicious prosecution of the Plaintiff when Defendant Oliver was aware that Plaintiff was not the female subject." ECF No.: 29, Pg. ID 872-73. How so? Plaintiff fails to articulate any act committed by Officer Oliver, after becoming aware that Plaintiff was not the female suspect, was in furtherance of the prosecution of Plaintiff.

**Line-Up Instructions:** Plaintiff also seeks to inject a third-party beneficiary argument from contract law into this matter stating, "Oliver relied on the identification although she had a signed agreement with the Victim stating, '[if] you make a selection of an individual who is ultimately not involved in the crime, that

5

individual will not incur any charges or police action just because you selected them." Id. at Pg. ID 861; citing ECF No.: 25-1, Pg. ID 801. Obviously, this does not mean that a positive witness identification, standing alone, will not necessarily serve as the basis to establish probable cause. Rather it stands for the proposition that if circumstances, such as knowledge of plainly exculpatory information, gives law enforcement a reason to doubt the witness' veracity or the reliability of the identification, that the identification does not automatically mean that the identified individual will be charged. See, Ahlers, supra at 370, 372 (discussing Crisp).

**License Plate Tracker:** Plaintiff also argues that Officer Oliver could have conducted surveillance of Plaintiff's vehicle "since the Detroit Police was [*sic*] monitoring Plaintiff's vehicle through a license plate tracker." ECF No.: 29, Pg. ID 862. Simply stated, Plaintiff misunderstands the Intelligence Work-Up (ECF No.: 25-1) which is prepared **after** the arrest warrant had been signed and is prepared for the purpose of assisting the FAST Team in locating the potential whereabouts of persons with outstanding arrest warrants.

**Same Arguments:** Ultimately, Plaintiff's Response to Defendant's Motion for Summary Judgment, relies upon the same deficient analysis relied upon by Plaintiff in support of her own Motion for Summary Judgment, and addressed in Defendant's Response thereto. ECF No.: 30-1, Pg. ID 895. As outlined therein however, where there has been a positive witness identification, the duty of an officer to conduct

6

further investigation before making an arrest or seeking an arrest warrant, exists in only two situations. First, where "there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation" (<u>Ahlers</u>, at <u>370</u>); and second, where the officer is on notice of plainly exculpatory information rebutting the witness identification. <u>Kuehl, 173 F.3d 646, 651 (1999)</u>. This duty does not extend to situations where further investigation might uncover exculpatory information. <u>Ahlers, at 302 (discussing Crisp, 1998 WL 180561 at \*4)</u>.

Here, while Plaintiff alleges that there was more that Officer Oliver *could* and/or *should* have done before requesting Plaintiff's arrest warrant, there is no allegation, let alone evidence, that Officer Oliver ignored "**plainly exculpatory** information" (<u>Kuehl, supra</u>) or that Mr. Walker intentionally misidentified Plaintiff.  This leaves only the reliability of Mr. Walker's identification under the *Biggers* framework, which as explained, uniformly falls in favor of witness identification. <u>See, ECF No.: 30-1, Pg. ID 902-05</u>. Accordingly, *at a minimum*, it was reasonable for Officer Oliver to believe that probable cause for Plaintiff's arrest existed, particularly as her supervisor, two Wayne County Prosecutors, and a Magistrate Judge agreed.

                                                        Respectfully Submitted,
                                                        CITY OF DETROIT LAW DEPARTMENT

December 1, 2024                   /s/  <u>Gregory B. Paddison</u>
                                                        Gregory B. Paddison (P75963)
                                                        Attorney for Defendant