UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN – SOUTHEASTERN DIVISION

PORCHA WOODRUFF,　　　　　　　　　　　　Hon. Judith E. Levy
　　Plaintiff,　　　　　　　　　　　　　　　　Case No.: 5:23-cv-11886

- vs -

LASHAUNTIA OLIVER,
　　Defendant.
_____/

## AFFIDAVIT

STATE OF MICHIGAN　　　　)
　　　　　　　　　　　　　　) ss.
COUNTY OF WAYNE　　　　　)

I, Jamal Hamood, being first duly sworn, deposes and states as follows:

1. I am a competent person over eighteen (18) years of age.

2. I make this Affidavit based on personal knowledge and review of available records, and if sworn as a witness, I can testify competently to the facts stated herein.

3. I am a Master Sergeant with the Detroit Police Department ("DPD") assigned to Internal Affairs, which is responsible for investigating major misconduct or criminality by members of DPD. I have been in this role for ten (10) years and was specifically assigned to the investigation relating to the arrest of Ms. Porcha Woodruff ("Ms. Woodruff" and "Woodruff IA Investigation").

4. I was assigned the Woodruff IA Investigation on August 11, 2023, and completed the investigation on September 23, 2024.

5. I have reviewed the Recorded Video filed in this matter as "Former Detroit Police Chief James White's Press Conference regarding Plaintiff on August 9, 2023" ("Press Conference"), as well as the transcript from said Press Conference filed

1

as ECF No.: 57.

6. I write this Affidavit to address discrepancies between the statements made during the Press Conference and my findings during the Course of the Woodruff IA Investigation, which suggest that the preliminary information provided to the DPD representatives at the Press Conference was underdeveloped at the time the statements were made. These discrepancies, based upon my findings during the course of a thirteen (13) month investigation, include as follows:

   a. The representation that Officer LaShauntia Oliver ("Officer Oliver") violated DPD's eyewitness identification and line-up policies, that existed as of February of 2023, was inaccurate based on the following, again that **as of February 2023**:

      i. DPD Policy did not prohibit the use of an image derived from Facial Recognition Technology ("FRT") in a photo line-up;

         - This prohibition was not added to DPD policy until August 17, 2023;[1]

         - The Woodruff IA Investigation uncovered that the image of Ms. Woodruff that was included in the photo-lineup from which she was identified as the female suspect was not derived from FRT;

            i. The image of Ms. Woodruff that was provided by the Crime Intelligence Unit ("CIU") to Officer Oliver as an Investigative Lead was a mugshot from October of 2019, whereas the image of Ms. Woodruff that was included by Deputy Donald Greenwald ("Dep. Greenwald") was from an unrelated arrest in 2015;

      ii. The Woodruff IA Investigation also revealed that Officer Oliver did not prepare the photo-lineup from which Ms. Woodruff was identified as the female suspect;

---

[1] DPD Special Order 23-23.

2

- The photo-lineup from which Ms. Woodruff was identified as the female suspect was prepared by Dep. Greenwald of the Oakland County Sheriff's Office who was part of a collaborative multi-departmental auto-theft task force;

iii. DPD Policy did not require that sequential, double-blind photo-lineups be used by DPD investigators when presenting to an eye-witness or victim;

- This requirement took effect in August of 2023, as part of DPD Special Order 23-23;

- Through the Woodruff IA Investigation it was determined that the photo-array including the image of Ms. Woodruff from which she was identified as the female suspect was presented to the victim in the presence of stand-in attorney, Wyatt Harris;

iv. DPD Policy did not require that an investigating officer identify an independent basis, aside from an investigative lead provided by the CIU derived through the use of FRT, to present a photo-lineup to a victim or eyewitness, nor to establish sufficient probable cause to present a Warrant Request to the WCPO;

- This requirement took effect in August of 2023, as part of DPD Special Order 23-23;

b. Other matters warranting clarification are as follows:

i. As of February of 2023, before presenting a Warrant Request to the Wayne County Prosecutor's Office ("WCPO"), which originated from an investigative lead derived through the use of FRT, investigating Officers were required to obtain approval from two (2) superiors, including their direct supervisor and a Division Captain;

- The Woodruff IA Investigation determined that Officer Oliver obtained approval to submit the Warrant Request

3

relative to Ms. Woodruff from her supervisor, Sgt. Antonio Allen, and Division Captain, Anthony O'Rourke;

- The requirement that approval to present a Warrant Request to the WCPO, which originated from an investigative lead derived through the use of FRT, be obtained from an Investigator's direct supervisor, Division Captain, **and** a Captain from the Investigating Operations Division did not take effect until August of 2023, as part of DPD Special Order 23-23;

ii. There is not, nor was there as of February 2023, a requirement that every investigative technique be exhausted prior to submission of a Warrant Request to an investigating Officer's superiors or the WCPO;

iii. By the very nature of photo-lineups, the images of potential suspects will naturally appear similar, as a line-up containing images of individuals with drastically different features from the suspect would not only defeat the purpose of the lineup, but would itself create an impermissibly suggestive lineup;

iv. Regarding the procedure by which an investigative lead is provided by the CIU to an Investigating Officer, unless the CIU Analyst is able to narrow the pool of potential leads generated by FRT to a single candidate, no investigative leads are provided to the investigating officer. Moreover, the Investigating Officer has no involvement or participation in the narrowing of a pool of potential leads to a single candidate.

- In this case, the Woodruff IA Investigation revealed that Officer Oliver submitted an image of the female suspect taken from surveillance at a BP Gas Station to the CIU, after which a search using FRT was performed by CIU Analyst Nathan Howell ("Analysist Howell"). Analyst Howell narrowed the field of computer-generated matches to a single lead and in accordance with DPD Policy, Analyst Howell's determination was reviewed and approved by a second Analyst, Kamrin Dean, as well as CIU Executive

4

        Manager, David Collins. Only then was Ms. Woodruff's identity disclosed to Officer Oliver as an investigative lead.

  c. Finally, concerning the characterization of the underlying criminal investigation as "poor," "shoddy," or the like, it is worth noting the following:

     i. The underlying criminal investigation was for Car Jacking and Armed Robbery, both of which are Part I crimes. These crimes are considered very serious and should be addressed with a heightened degree of urgency;

     ii. The underlying criminal investigation only reached the preliminary stages where an initial probable cause determination was made and a warrant request was submitted to the WCPO. Had Officer Oliver not immediately recognized that Ms. Woodruff was not the proper suspect, it is highly likely that additional investigative techniques would have been utilized in anticipation of the preliminary examination and/or criminal trial;

     iii. The Woodruff IA Investigation found that Officer Oliver routinely and repeatedly sought assistance and/or guidance from superior and more experienced DPD members assigned to the Commercial Auto Theft Section during the course of the criminal investigation;

7. As the IA Investigator assigned to this case, it is my conclusion that during investigations, errors do occur, and because of these errors DPD has learned and introduced better policies, procedures and training to minimize the risk that they occur again. The need for continued policy oversight, supervision, and revision, is critical as DPD's use of technology to combat violent crimes increases.

**FURTHER AFFIANT SAYETH NOT.**

/s/ *[signature]*
Master Sgt. Jamal Hamood

Subscribed and sworn to before me this 3rd day of April, 2025.

/s/ _____

LISA SZWAST, Notary Public

MACOMB County, Michigan

My Commission expires: 1 / 9 / 2027

Acting in Wayne County, Michigan

[Notary stamp: Notary Public, State of Michigan, County of Macomb, My Commission Expires Jan. 09, 2027, Acting in the County of _____]