**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN – SOUTHEASTERN DIVISION**

PORCHA WOODRUFF,　　　　　　　　　　　　　Hon. Judith E. Levy
　　　Plaintiff,　　　　　　　　　　　　　　　　　Case No.: 5:23-cv-11886

- vs -

LASHAUNTIA OLIVER,
　　　Defendant.
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING CHANGES MADE TO THE WARRANT REQUEST**

Although it is unclear exactly what Plaintiff's Response (ECF No.: 72) to Defendant's Supplemental Brief Regarding Changes Made to the Warrant Request (ECF No.: 70) ["Supplemental Brief"] is attempting to argue, Defendant submits the following to address some of the *apparent* arguments, allegations, and in some cases accusations, made therein.

Plaintiff first asserts that undersigned counsel stated to the Court that the information ultimately disclosed in Defendant's Supplemental Brief would "take this case in an entirely different direction." ECF No.: 72, Pg. ID 2223-4. Although undersigned counsel does not recall the *exact* language used in requesting to share the emails attached to Defendant's Supplemental Brief directly with this Honorable Court, counsel recalls it being along the lines of public disclosure, "could open a whole new can of worms." To clarify, communications between the Detroit Police

1

Department ("DPD") and the Wayne County Prosecutor's Office ("WCPO") are *generally* not disclosed for fear of disclosing information protected under the investigative privilege doctrine [see, United States v. Se. Eye Specialists, PLLC, 586 F. Supp. 3d 787, 793 (M.D. Tenn. 2022)] and undersigned counsel was concerned about setting a precedent of doing so. After discussing the issue internally however, disclosure of the emails was authorized.

Next Plaintiff asserts that "essentially at that time, APA Garcia does not believe there is sufficient evidence for a warrant for Defendant number 2, Porcha Woodruff and requested that Defendant Oliver add more facts." ECF No.: 72, Pg. ID 2225. While Plaintiff seems confident in assuming APA Garcia's thought process, Defendant opines that it is equally likely that APA Garcia **did** believe that the evidence supported charges against Ms. Woodruff, but that additional information should be added to the Warrant Request before submission to the Magistrate.

Plaintiff also argues that "[w]hat is interesting about [the information added to the Amended Warrant Request] is that [] Oliver does not document in her interview with Victim any of the information regarding the drugging that was documented in the new arrest warrant." Id.; citing, ECF No.: 70-6, Pg. ID 2066-67. However, as this Honorable Court is aware, the Warrant Request was not nakedly provided to the WCPO or Magistrate. Rather, it was provided along with copies of all of the investigative reports, recordings, and other documents created during the criminal

2

investigation including, *inter alia*, Officer Larsen's Incident/Investigation Report and Mr. Walker's statement to Det. Fletcher on the night of the carjacking.[1] In other words, had Officer Oliver provided APA Garcia with **only** the original Warrant Request, how would he have known about Mr. Walker's pistol or the fact that he not only had been drinking, but suspected that he'd been drugged?

Pertaining to the emails attached to Defendant's Supplemental Brief, which were only recently obtained, Defendant acknowledges that emails showing Captain O'Rourke's approval of the Amended Warrant Request have not been produced. However, this is because they were not requested by Plaintiff and the City's IT Department was only asked to pull emails with certain keywords or between certain specific accounts, with Captain O'Rourke's not being among them.[2] Further, while a Departmental Supervisor's Approval may be required under DPD policy, it is irrelevant for purposes of a constitutional analysis and it has never been disputed that Captain O'Rourke approved both Warrant Requests.

Next, Plaintiff states that it is "concerning" that Officer Oliver sent the revised

---

[1] Noting Mr. Walker's statement to Trinidad that he had a pistol, but did not have it on him and the pistol was the first thing the attacker demanded (see, ECF No.: 70-10, Pg. ID 2145-45) and Mr. Walker's belief that Trinidad had put something in his drink. See, ECF No.: 70-9, Pg. ID 2115-16.

[2] Because Officer Oliver had separated from DPD before the time this request was made, she was not able to personally access her email account to obtain these communications.

Warrant Request to the 36th District Court because she "does not show where APA Garcia sent a response to the newly added facts approving the arrest warrant." ECF No.: 72, Pg. ID 2226. However, Officer Oliver has maintained that she and APA Garcia communicated about this case in person, by telephone, and/or by email, so the absence of an email specifically approving the revisions is no more than a red-herring and, regardless, we know that APA Garcia **did** approve the revised Warrant Request, **because he and Kym Worthy signed it**! ECF No.: 70-5, Pg. ID 2021-27.

It is unclear why Plaintiff refers to the Joint Discovery Plan (ECF No.: 11), prepared by Counsel based on the information available in September of 2023, as evidence that Officer Oliver knew "the identity of the prosecutor at the time initial disclosures was [sic] prepared." ECF No.: 72, Pg. ID 2226 (citation omitted).

Thereafter, Plaintiff's counsel appears to accuse undersigned counsel of knowingly concealing the signed Arrest Warrant for some inexplicable reason. Id. at Pg. ID 2226-27. When at Officer's Oliver's deposition, Defense Counsel stated he did not have the signed Arrest Warrant (Id.; citing, ECF No.: 23-25, Pg. ID 574), he was stating that it was not in the materials that he'd brought to the deposition. This is clear because, as Plaintiff notes, the signed Arrest Warrant was received shortly after February 16, 2024, in the WCPO's response to Defendant's subpoena. **This of course also means that Plaintiff had also received the signed Arrest Warrant contained in the subpoena response**.

4

Finally, regarding Plaintiff's contention with Defendant's Responses to Plaintiff's third Discovery Requests, why Plaintiff would accuse Officer Oliver of being dishonest in responding to a **Request to Produce**, is befuddling. See, ECF No.: 72, Pg. ID 2227-8. Even more confusing is how anything contained in, or attached to, Defendant's Supplemental Brief has caused Plaintiff any prejudice. Well before the close of discovery, Plaintiff possessed both, the revised Warrant Request (see, ECF No.: 4-1), and the original Warrant Request contained in the materials produced by the WCPO. ECF No.: 70-9, Pg. ID 2127. Why Plaintiff did not question Officer Oliver about these changes is unclear, but Plaintiff cannot summarily claim prejudice caused by the attachments to Defendant's Supplemental Brief, when they do nothing but support what Officer Oliver has maintained from the onset of this case. Namely, that she provided all investigatory information in her possession to the WCPO, who approved the Warrant Request, before it was later submitted and approved by the Magistrate Judge.

While zealous advocacy should be encouraged, personal attacks and baseless accusations of professional impropriety have no place in the practice of law.

                                             Respectfully Submitted,
                                             CITY OF DETROIT LAW DEPARTMENT

April 29, 2025                    /s/   Gregory B. Paddison
                                                    Gregory B. Paddison (P75963)
                                                    Attorney for Defendant